**STATE of Tennessee, Appellee,**

v.

**Thomas ANDERSON, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Dec. 18, 1997.

Application for Permission to Appeal Denied by Supreme Court Dec. 14, 1998.

10

John H. Henderson, District Public Defender, Larry D. Drolsum, Assistant Public Defender, Franklin, for Appellant.

Charles W. Burson, Attorney General of Tennessee, John P. Cauley, Assistant Attorney General of Tennessee, Nashville, Joseph D. Baugh, Jr., District Attorney General, Jeff Burks, Assistant District Attorney General, Franklin, for Appellee.

## OPINION

TIPTON, J.

The defendant, Thomas Anderson, appeals as of right from his jury conviction by a jury in the Williamson County Circuit Court for theft of property valued over five hundred dollars but less than one thousand dollars, a Class E felony. The trial court sentenced the defendant to six years in the Department of Correction as a Range III, persistent offender and imposed a fine of eight hundred dollars. The defendant contends that:

(1) venue for the theft offense is not sufficiently proven to be in Williamson County,

(2) the evidence is insufficient to support his conviction given the lack of corroboration of an accomplice's testimony,

(3) the trial court erred in failing to instruct the jury regarding an accomplice and the requirement that accomplice testimony be corroborated, and

(4) the trial court erred in sentencing the defendant because of improper consideration of enhancing and mitigating factors and the rejection of an alternative sentence.

We disagree and affirm the defendant's conviction and sentence.

The evidence in this case involves the theft of certain items from Robert N. Moore, Jr.'s automobile in the early morning hours of October 31, 1993. Mr. Moore testified that he returned to his home in Franklin, Tennessee, late in the evening on October 30. He stated that he worked into the night and went to bed around 2:00 a.m. He said that he approached his 1992 Lincoln the next morning when leaving for church and discovered that the contents of the car had been ransacked. Several items lay on the lawn outside the car, and the interior of the car was a mess. He determined that two cameras, a 35 millimeter Canon EOS with a zoom lens and an antique Roliflex camera, were missing from his car. Also stolen were a brown leather jacket and Mr. Moore's checkbook which contained about five hundred dollars in cash. He estimated the total value of the stolen items to be fifteen hundred dollars. Mr. Moore immediately called the Franklin Police Department and an investigation ensued.

Mr. Moore testified that he made independent efforts to retrieve the stolen items. He stated that he called several pawn shops and that he went to several camera shops. He said that on November 10, 1993, he found the Canon EOS camera at Photographic Systems Unlimited in Nashville. He informed the Franklin Police Department of his discovery, and detectives retrieved his camera from the photography shop. He stated that he had

been unsuccessful in recovering any other items.

On cross-examination, Mr. Moore admitted that he had not locked his car doors the night before the theft. He also acknowledged that the leather coat was visible but that the cameras were hidden underneath some paperwork. He stated that the investigating officers did not dust for fingerprints. He also stated that he is certain that the recovered Canon EOS camera and lens are his because their serial numbers match the numbers on the boxes he saved when he purchased the items.

Jerry Williams, an employee of Photographic Systems Unlimited, testified that he purchased a used, 35 millimeter Canon EOS camera with a zoom lens from John Patton on November 3, 1993. He stated that he declined the Roliflex because it needed some repair. He said that he confirmed Patton's identity by checking his driver's license. Mr. Williams identified a returned check for one hundred and eighty-nine dollars issued to Patton. He said that Patton waited in the store for about one hour while he inspected the cameras to determine whether he should buy them. He said that Patton appeared to be alone, but a young lady came to the door at one point and Patton went outside to talk to her. Mr. Williams recalled that Patton was wearing work clothes that were dusty.

On cross-examination, Mr. Williams testified that the defendant was not the man who sold him the camera. He also stated that he had no reason to be suspicious of Patton because he appeared calm and had a quiet manner. He said that Patton told him that the cameras had belonged to his father. He remembered that Patton carried the cameras into the store in his hands.

Detective Terrance Smithson of the Franklin Police Department testified that he was assigned to investigate Mr. Moore's case after the initial report was made. He stated that he retrieved the Canon EOS camera on November 10 after confirming that the serial numbers matched those found on the original boxes in Mr. Moore's possession. He recalled that his investigation of the sale of the camera led to Patton who implicated the defendant. Detective Smithson stated that

upon interviewing the defendant, the defendant told him that he drove Patton to the photography shop but knew nothing about any stolen cameras. He also stated that the defendant admitted that Patton gave him one hundred dollars. Detective Smithson acknowledged that Patton pled guilty to theft over one thousand dollars in relation to this investigation. On cross-examination, he stated that Mr. Moore's car was not dusted for fingerprints due to inclement weather but admitted that the interior of the car still could have been dusted.

A written statement given by the defendant to Detective Smithson reflects that the defendant asserted that Patton called him and asked him to pick him up from work and to take him to Nashville. The defendant stated that he agreed but that Patton directed him to the photography shop. The defendant told Detective Smithson that he waited on Patton for about an hour and a half and that Patton paid him after they left the store. The defendant claimed in his statement that he did not know anything about a stolen camera, money or jacket.

John Nicholas Patton testified that he had known the defendant all of his life. He said that the defendant contacted him at his home in Franklin about buying a camera in early November of 1993. He told the defendant that he could not afford the camera but helped the defendant locate several photography stores that buy used equipment. Patton testified that the defendant did not have the cameras with him at that time. He stated that the defendant came back in a few days and that he had the cameras with him. He said that a few days later the defendant and the defendant's girlfriend, Brenda Jenkins, picked him up around 4:00 p.m. at the nursery where he worked and they drove to Photographic Systems Unlimited where he sold the Canon EOS camera for one hundred and eighty-nine dollars. He stated that he told the store clerk that the cameras belonged to his father because he was suspicious that they were stolen. He said that they drove to a bank to cash the check and that the defendant kept one hundred dollars and gave him eighty-nine dollars. He recalled that they threw the Roliflex out the

window somewhere in East Nashville after they were unable to sell it. He also said that the defendant visited him on the day the defendant made bond and that the defendant told him to lie about the source of the cameras.

On cross-examination, Patton admitted to several worthless check convictions. He denied calling the defendant to ask him for a ride to Nashville. He claimed that he called the defendant's house twice, spoke to Ms. Jenkins, and stated that he knew where to sell the cameras in Nashville. He also denied ever possessing the cameras and stated that the defendant brought the cameras with him on their trip to Nashville. He admitted that he accepted the shop's offer without consulting with the defendant and also admitted that he initially lied to the police about the source of the cameras to cover for the defendant. Patton also described a brown, leather jacket with seams and stitches that the defendant was wearing when they went to Nashville. According to Patton, the defendant eventually told him that he got the jacket along with the camera and a check-book which contained approximately one hundred dollars in cash from a car. He stated that the defendant did not tell him where the car was located. Mr. Moore was recalled to testify and confirmed that the jacket described by Patton sounded similar to the one stolen from his car.

The defendant and Patton were jointly indicted for burglary and theft. Patton admitted that he entered a guilty plea to theft of property over one thousand dollars but less than ten thousand dollars, a Class D felony, by exercising control over Moore's property without his consent. Patton stated that as part of the agreement, he agreed to testify against the defendant and the burglary charge was dismissed.

Brenda Jenkins testified for the defense that she has known the defendant for eighteen or twenty years and that she is his girlfriend and the mother of his five daughters. She recalled that Patton phoned her home twice on November 3, 1993, and asked for a ride to Nashville. She said that around 4:00 p.m. she and the defendant picked him up at his workplace and drove him to a

business in Nashville. Ms. Jenkins stated that she did not see Patton carry anything into or out of the business. She denied seeing any cameras and could not remember whether the defendant was wearing a brown leather jacket. She recalled waiting for a long time while Patton was inside and that she went to the door on one occasion to tell him to hurry. Ms. Jenkins said that they later drove Patton to a bank where he cashed a check and gave the defendant some money. She recalled Patton saying that he had sold something that had belonged to his grandfather. On cross-examination, Ms. Jenkins maintained that she thought that the defendant was helping Patton by giving him a ride. She also recalled hearing Patton call her his wife when she came to the door of the photography shop to tell him that she was ready to leave. She denied throwing a camera out the window.

## I. VENUE

The defendant contends that the state failed to establish venue for the offense in Williamson County. He argues that the uncorroborated testimony of an accomplice, in this case Patton, does not satisfy the requirement that the state prove venue by a preponderance of the evidence. He also contends that he only exercised control over the money received from the sale of the camera and that it occurred in Davidson County, Tennessee. The state asserts that the defendant has waived the issue by failing to object at trial and by failing to raise the issue in his motion for new trial. *See* T.R.A.P. 36(a).

As for the state's waiver claim, we note that although it is a jurisdictional matter, venue can be waived in certain circumstances. *See State v. Nichols*, 877 S.W.2d 722, 727–29 (Tenn.1994) (motion for change of venue constitutes waiver of claim that court lacked jurisdiction); *State v. Turner*, 919 S.W.2d 346, 358 (Tenn.Crim.App.1995) (rejecting the defendant's claim that the trial court was without jurisdiction to accept his guilty plea and holding that he waived the issue by raising the issue for the first time on appeal); *State v. Smith*, 906 S.W.2d 6, 9 (Tenn.Crim.App.1995) (waiver by consenting to trial court's ruling that prosecution would

be more appropriate in another county); *State v. Gilbert*, 751 S.W.2d 454, 462 (Tenn. Crim.App.1988) (waiver by failing to stand on motion for judgment of acquittal and by failing to make references to the record). However, "venue ... cannot be waived by going to trial on the merits of the case." *Clariday v. State*, 552 S.W.2d 759, 770 (Tenn.Crim. App.1976). Also, a defendant is not required to raise the issue of venue before trial because jurisdictional objections "shall be noticed by the court at any time during the pendency of the proceedings." Tenn. R.Crim. P. 12(b)(2). With this case still pending on appeal, we disagree with the state's argument that the defendant waived the issue of venue by failing to object at trial.

█ Moreover, the defendant was not required to include the issue of venue in his motion for new trial. *See* T.R.A.P. 3(e) and 36(a). Rather than a grant of a new trial, a successful appeal of an issue concerning venue would result in the dismissal of the prosecution. Therefore, we also disagree with the state's contention that the defendant waived the issue by failing to include it as grounds for relief in his motion for new trial.

█ Our constitution provides that a defendant has the right to be tried by an impartial jury of the county in which the crime was committed. Tenn. Const. art. I, § 9; Tenn. R.Crim. P. 18; *Chadwick v. State*, 201 Tenn. 57, 60, 296 S.W.2d 857, 859 (1956). Our court has construed the constitutional guarantee as precluding a court from indicting or prosecuting a defendant for crimes committed outside the county where the court is located. *State v. Hill*, 847 S.W.2d 544, 545 (Tenn.Crim.App.1992). Moreover, "venue cannot be changed except on application of or the consent of the accused." *Chadwick*, 296 S.W.2d at 859. Although venue is not an element of the crime, the state must prove by a preponderance of the evidence that the offense was committed in the county alleged in the indictment. *Harvey v. State*, 213 Tenn. 608, 612, 376 S.W.2d 497, 498 (1964); *State v. Baker*, 639 S.W.2d 670, 672 (Tenn.Crim.App.1982). Circumstantial evidence may be used to establish venue. *State v. Bennett*, 549 S.W.2d 949, 950 (Tenn.1977).

█ In this context, the defendant's claim that venue could not be established upon the uncorroborated testimony of an accomplice is without merit. In Tennessee, guilt beyond a reasonable doubt may not be found upon the uncorroborated testimony of an accomplice in recognition of the "obvious dangers" attending such testimony. *Sherrill v. State*, 204 Tenn. 427, 435, 321 S.W.2d 811, 814 (1959). In this respect, the requirement of corroboration is needed to allow for a finding of guilt beyond a reasonable doubt. However, as previously noted, venue must only be proven by a preponderance of the evidence. Thus, we believe that venue may be established upon the uncorroborated testimony of an accomplice.

█ Relative to the evidence when viewed in the light most favorable to the state, we believe that it shows that the offense occurred in Williamson County. Patton testified that the defendant came to his home in Franklin one day in early November and asked him if he was interested in buying some cameras. Patton also stated that the defendant had the cameras with him when he came back to his house a few days later. He said that a couple of days afterwards, the defendant picked him up at his workplace in Brentwood, they went to Nashville, and he sold the camera. Patton testified that the defendant kept one hundred dollars and gave him eighty-nine dollars when they cashed the check received from the sale of the camera. When Patton asked the defendant where he got the items, he told him from a car.

In addition to Patton's testimony, the victim testified that the theft occurred late at night on October 31, 1993, while his vehicle was parked in the driveway of his home in Williamson County. Also, the defendant admitted that he agreed to pick up Patton in Brentwood and take him to Nashville. He told Detective Smithson that he received one hundred dollars from the sale of the camera. Moreover, Ms. Jenkins confirmed that Patton gave the defendant some money. We conclude that the evidence sufficiently proved that the defendant exercised control over the cameras in Williamson County.

## II. SUFFICIENCY OF THE EVIDENCE—ACCOMPLICE TESTIMONY

The defendant challenges the sufficiency of the evidence to support his conviction by asserting that the state failed to corroborate the testimony of Patton, an accomplice. The state responds that Patton was not an accomplice and even if he is considered an accomplice, the defendant's statement to the police sufficiently corroborates Patton's testimony. We hold that Patton was an accomplice but that sufficient corroborating evidence supports the conviction.

Pursuant to T.C.A. § 39–14–103, a person "commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." As previously noted, a defendant cannot be convicted of a crime in Tennessee on the uncorroborated testimony of an accomplice. *See Sherrill*, 204 Tenn. at 435, 321 S.W.2d at 814. An accomplice is defined as a person who knowingly, voluntarily and with common intent unites with the principal offender in the commission of the crime. *State v. Perkinson*, 867 S.W.2d 1, 7 (Tenn.Crim.App.1992). "A common test is whether the alleged accomplice could have been indicted for the offense." *Id.* When it is clear and undisputed that the witness participated in the crime, the trial court decides as a question of law whether he or she is an accomplice. *Id.* The question becomes one of fact for the jury to decide when the facts are in dispute or susceptible to different inferences. *Id.* In other words, where a witness denies involvement in the crime, the question of whether he or she is an accomplice is one of fact to be submitted to the jury with proper instructions from the court on how to consider such testimony. *Ripley v. State*, 189 Tenn. 681, 687, 227 S.W.2d 26, 28 (1950).

In order to corroborate the testimony of an accomplice, "there should be some fact testified to, entirely independent of the accomplice's evidence, which, taken by itself, leads to the inference, not only that a crime has been committed but also that the defendant is implicated in it." *Clapp v. State*, 94 Tenn. 186, 195, 30 S.W. 214, 217 (1895). In other words, the corroboration must consist of some fact or circumstance linking the defendant to the commission of the crime. Furthermore, the jury ultimately determines the degree of evidence necessary to corroborate the testimony of an accomplice, and it is sufficient "if there is some other evidence fairly tending to connect the defendant with the commission of the crime." *Id.*

We agree that Patton was an accomplice to the offense of theft, whose testimony had to be corroborated. *See State v. Lawson*, 794 S.W.2d 363, 369 (Tenn.Crim.App. 1990) (concluding that a witness who had previously been convicted of the same offense as the defendant was an accomplice as a matter of law). Patton was jointly indicted for the offense. He conceded his involvement in the theft by pleading guilty to the crime. He admitted that he aided the defendant in the disposition of the stolen items by selling the camera to the photography store. He also admitted that he received a portion of the money from the sale of the camera.

Regarding the defendant's involvement in the crime, Patton testified that the defendant came by his house and asked him whether he wanted to buy some cameras. Although he declined the defendant's offer, he helped him find several photography stores that purchase used photography equipment. A few days later, the defendant came by his house with the cameras. Patton stated that in a few more days, the defendant and Ms. Jenkins came by his workplace and they drove to Nashville to sell the cameras. He testified that he sold the camera for the defendant and that the defendant gave him eighty-nine dollars after cashing the one hundred and eighty-nine dollar check received from the sale. He said that the defendant kept one hundred dollars. When Patton asked the defendant where he obtained the items, the defendant told him that he got the cameras, a jacket, and a checkbook which contained one hundred dollars in cash from a car.

We conclude that sufficient evidence corroborates Patton's testimony regarding the defendant's involvement in the theft. First,

the defendant's statements to Detective Smithson provide corroboration. The defendant admitted that he picked Patton up from work and took him to Nashville and that he received one hundred dollars from the sale of the camera. Ms. Jenkins also testified that Patton gave the defendant some money when they cashed the check. Moreover, Mr. Moore stated that his property was taken from his car. These facts lead to the inference that the defendant committed the crime of theft of property. Under these circumstances, we hold that the jury could have concluded beyond a reasonable doubt that the defendant intended to deprive the rightful owner of his property and knowingly exercised control over it without the owner's consent.

### III. JURY INSTRUCTION— ACCOMPLICE TESTIMONY

The defendant also contends that the trial court erred in failing to instruct the jury regarding an accomplice and the requirement that accomplice testimony be corroborated. The state responds that if any error was committed by the trial court's failure to instruct, the defendant invited such error by rejecting the trial court's offer of the instruction. Furthermore, the state argues that this issue is waived by the defendant's failure to raise it in his motion for a new trial. We hold that the trial court's omission of a jury instruction concerning accomplice testimony was not error.

A trial court has a duty to give a complete charge of the law applicable to the facts of the case. T.C.A. § 40–18–110(a); *State v. Thompson,* 519 S.W.2d 789, 792 (Tenn.1975). The obligations of the trial court include giving jury instructions concerning issues fundamental to the defense and essential to a fair trial even though a special request was not made at trial. *See, e.g., State v. Reece,* 637 S.W.2d 858, 861 (Tenn.1982) (prior inconsistent statements offered for impeachment where the state's case is weak and the statements are extremely damaging); *Bishop v. State,* 199 Tenn. 428, 433, 287 S.W.2d 49, 50 (1956) (conviction based solely on circumstantial evidence); *Myers v. State,* 185 Tenn. 264, 268, 206

S.W.2d 30, 32 (1947) (self-defense); *Pearson v. State,* 143 Tenn. 385, 397–98, 226 S.W. 538, 541 (1920) (weight to be given to a dying declaration); *Frazier v. State,* 117 Tenn. 430, 460–61, 100 S.W. 94, 100 (1907) (guilt beyond a reasonable doubt); *State v. Brown,* 823 S.W.2d 576, 585 (Tenn.Crim.App.1991) (unanimous verdict when proof of multiple offenses fits the charge alleged).

In *State v. Williford,* 824 S.W.2d 553, 554 (Tenn.Crim.App.1991), this court held that a determination of insufficient evidence to corroborate an accomplice's testimony results in an acquittal and that double jeopardy bars retrial. Thus, the accomplice rule bears directly upon what evidence is deemed sufficient to allow for a rational trier of fact to find guilt beyond a reasonable doubt. It is effectively ingrained as part of the standard of proof necessary to return a verdict of guilt. Therefore, an instruction regarding the requirement that accomplice testimony be corroborated appears to be fundamental. *See Donald Lewis Sullens v. State,* No. 01C01–9212–CR–00394, Davidson County, slip op. at 6, 1993 WL 484218 (Tenn.Crim. App. Nov. 18, 1993) (concluding that the trial court erroneously determined that a post-conviction petition did not raise due process concerns when the trial court failed to instruct the jury regarding the law of accomplice testimony and the need for corroboration).

However, our supreme court has held that an instruction on the rule requiring corroboration of an accomplice's testimony is not fundamental. *Monts v. State,* 214 Tenn. 171, 189, 379 S.W.2d 34, 42 (1964); *Arterburn v. State,* 208 Tenn. 141, 145, 344 S.W.2d 362, 364 (1961). Upon the trial court's failure to instruct the jury regarding accomplice testimony and the requirement of corroboration, it becomes the obligation of the defendant to make a special request for the instruction. *Cole v. State,* 187 Tenn. 459, 463–64, 215 S.W.2d 824, 826 (1948); *State v. Foster,* 755 S.W.2d 846, 848 (Tenn.Crim.App.1988). In the absence of a special request, the trial court does not err by failing to instruct the jury about accomplice testimony even if the circumstances of the case warrant such an instruction. *Arterburn,* 208 Tenn. at 145,

344 S.W.2d at 364; *Cole*, 187 Tenn. at 463–64, 215 S.W.2d at 826; *State v. Blackwood*, 713 S.W.2d 677, 681 (Tenn.Crim.App.1986); *State v. Copeland*, 677 S.W.2d 471, 475 (Tenn.Crim. App.1984); *Bolton v. State*, 591 S.W.2d 446, 448 (Tenn.Crim.App.1979).

In *Copeland*, the trial court failed to give instructions on how to receive and consider the testimony of an accomplice, a codefendant. 677 S.W.2d at 475. Rather, the trial court instructed the jury that it was to give the same weight to the testimony and to determine the credibility of the accomplice on the same basis as used for other witnesses. Although the court agreed that the trial court should have given an instruction regarding corroboration of accomplice testimony, it held that the trial court did not err because defense counsel neither objected to the instructions given nor made a special request for an instruction when inquiry was made by the trial court. *Id.*

█ In this case, the jury charge given by the trial court contains a general instruction regarding the credibility of all witnesses. It does not contain an instruction regarding accomplice testimony and the requirement that it be corroborated. However, the defendant did not make a special request for an instruction at trial. Nor did he object to the jury instructions given by the trial court. At the close of the proof during a jury-out hearing, the trial court inquired as to any comments, objections or requests the parties had about the jury instructions. At that time, the following exchange took place:

Defense Counsel: I haven't had a chance to read all the way through it.... Is the court considering giving an accomplice charge in this case on corroborating testimony of accomplices?

Court: Are you requesting it?

Defense Counsel: Well, it is the state's theory that he is an accomplice....

Court: No, it's not the state's theory that he's an accomplice. At least not in the burglary.

Defense Counsel: At least it is as to the theft. I didn't know whether it would be error for the court not to instruct that so I wanted to point that out for the court. I have mixed feelings both ways about the accomplice charge, but I do see at least a basis as far as the theft is concerned.

Court: I concur. Are you requesting it?

Defense Counsel: No.

Upon the trial court's failure to instruct the jury on the issue of accomplice testimony, it became the defendant's responsibility to submit a special request. *See Foster*, 755 S.W.2d at 848. The failure to do so resulted in a waiver of the issue. *Id.; Copeland*, 677 S.W.2d at 474; *Bolton*, 591 S.W.2d at 448. Here, defense counsel informed the trial court that he had mixed feelings regarding an instruction detailing the requirement of corroboration of an accomplice's testimony and ultimately declined the offer to instruct the jury accordingly. A defendant is not entitled to relief on appeal when he fails to take action reasonably necessary to prevent or nullify the error. T.R.A.P. 36(a); *Foster*, 755 S.W.2d at 849. Moreover, the defendant also waived the issue by failing to include the issue in his motion for new trial. *See* T.R.A.P. 3(e) and 36(a). Therefore, we hold that the defendant is not entitled to relief.

## IV. EXCESSIVE SENTENCING

█ The defendant contends that the trial court erred in its application of enhancement and mitigating factors in setting a six-year sentence and in denying alternative sentencing. The state responds that the trial court gave proper consideration to all relevant mitigating and enhancement factors, as well as to the sentencing principles, and arrived at the proper sentence. The state also argues that although the defendant is presumed to be a favorable candidate for probation, he has not met his burden of showing suitability for probation. Initially, we note that the defendant is not presumed a favorable candidate for probation. Although convicted of a Class E felony, the defendant was sentenced as a Range III, persistent offender

and no presumption for alternative sentencing is afforded him. *See* T.C.A. § 40–35–102(6).

Appellate review of sentencing is *de novo* on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40–35–401(d). As the Sentencing Commission Comments to this section note, the burden is now on the defendant to show that the sentence is improper. This means that if the trial court follows the statutory sentencing procedure, makes findings of fact that are adequately supported by the record and gives due consideration to and proper application of the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. *State v. Fletcher,* 805 S.W.2d 785, 789 (Tenn.Crim.App.1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40–35–210(f)(1990).

*State v. Jones,* 883 S.W.2d 597, 599 (Tenn. 1994).

In conducting a *de novo* review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40–35–102,

–103 and –210; *see Ashby,* 823 S.W.2d at 168; *State v. Moss,* 727 S.W.2d 229 (Tenn.1986).

The sentence to be imposed by the trial court is presumptively the minimum in the range unless there are enhancement factors present. T.C.A. § 40–35–210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. T.C.A. § 40–35–210(d) and (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. T.C.A. § 40–35–210, Sentencing Commission Comments; *Moss,* 727 S.W.2d at 237; *see Ashby,* 823 S.W.2d at 169. For the purpose of review, the trial court must preserve in the record the factors it found to apply and the specific findings of fact upon which it applied the sentencing principles to arrive at the sentence. *See* T.C.A. §§ 40–35–210(f) and –209(c).

At the sentencing hearing, the defendant denied any involvement in the burglary or theft and said that he was remorseful for giving Patton a ride. He admitted splitting the proceeds of the sale of the camera with Patton, although he claimed that he received ninety dollars. He also conceded that he had several prior felony and misdemeanor convictions and that he committed the present crime while on parole. According to the defendant, he had been on parole since 1989 and his parole had not been revoked at the time of the sentencing hearing. The defendant stated that he is the sole provider for his six children. He testified that he works fifty to seventy hours per week at Middle Tennessee Marble where he had been employed since February 1994. The defendant said that he worked at Superior and Centex Builders for approximately one year before his employment at Middle Tennessee Marble. He also testified regarding his military experience. He stated that he was a squad leader in the United States Marine Corps from March 1976 to July 1977 and that he received a general discharge.

Ms. Jenkins testified that the defendant was a good husband and provider. She stated that she was unemployed and that the defendant was the sole source of income for their family. She also detailed the events that occurred on the day of the offense and asserted the defendant's innocence.

A letter submitted by the defendant's employer was also introduced. The letter states that the defendant has shown a desire to work hard and has offered to work extra hours when needed. It also requests that the court consider the hardship on the defendant's family and his employer in its decision regarding probation.

The presentence report reflects that the thirty-eight-year-old defendant denied any involvement in the crime and claimed that Patton lied regarding his participation. The report also states that the defendant has weekly child support obligations in the amount of one hundred and five dollars. It provides that the defendant is behind in payments in the amount of four thousand dollars. The report shows that the defendant denied alcohol or drug abuse, although he admitted using marijuana in the past. It also shows numerous felony and misdemeanor convictions, including theft, burglary and drug possession.

As a Range III, persistent offender convicted of a Class E felony, the possible range of punishment for the defendant was four to six years. See T.C.A. § 40–35–112(c)(5). The trial court imposed the maximum sentence of six years in the custody of the Department of Correction. The trial court determined that no mitigating factors applied. In imposing the maximum sentence, the trial court based its decision upon the following enhancement factors:

(1) the defendant has a previous history of criminal behavior in addition to that necessary to establish his sentencing range, see T.C.A. § 40–35–114(1), and

(2) the offense was committed while the defendant was on parole, see T.C.A. § 40–35–114(13)(B).

The trial court also found as an additional enhancement factor that the defendant was not truthful.

We note, although not discussed by either party, that the defendant's lack of truthfulness is not a proper consideration for increasing the length of his sentence. See T.C.A. § 40–35–114; State v. Randall L. McFarlin, No. 01C01–9406–PB–00202, Davidson County, slip op. at 14, 1995 WL 353776 (Tenn.Crim.App. June 13, 1995). In deciding to depart from the minimum sentence, the trial court is limited to those enhancement factors listed in T.C.A. § 40–35–114. State v. Dykes, 803 S.W.2d 250, 258 (Tenn.Crim.App.1990). Therefore, we believe that the trial court improperly relied on the defendant's untruthfulness to enhance the defendant's sentence.

However, in our de novo review, we conclude that enhancement factor (8) should be applied because of the defendant's previous history of unwillingness to comply with the conditions of a sentence involving release into the community. See T.C.A. § 40–35–114(8); State v. Pearson, 858 S.W.2d 879, 885 (Tenn.1993) (appellate court may rely upon a factor supported by the record even though it was not asserted by the state or applied by the trial court). In addition to the defendant's commission of the present offense while on parole, the presentence report reflects that the defendant previously violated conditions of probation for his 1982 convictions of second and third degree burglary. See State v. Hayes, 899 S.W.2d 175, 186 (Tenn.Crim.App.1995) (holding that enhancement based on factors (8) and (13) does not unfairly enhance the defendant's sentence twice for the same conduct). We hold that these circumstances warrant the application of this enhancement factor and that it should be given considerable weight.[1]

In support of his claim that his sentence is excessive, the defendant argues that the trial court should have considered several mitigating factors. He cites the existence of substantial grounds to excuse or justify his conduct, T.C.A. § 40–35–113(3), his minor

---

1. Though not a separate enhancement factor, a defendant's lack of truthfulness may be considered in determining the weight to be given to an applicable enhancement factor.

role in the offense, T.C.A. § 40–35–113(4), and several other mitigating factors that fall under the catchall provision of T.C.A. § 40–35–113(13). Pursuant to T.C.A. § 40–35–113(13), the defendant argues that the trial court erroneously refused to recognize as mitigating factors his belief that his conduct was legal, that his conduct was a result of circumstances unlikely to occur again; and that he has the capacity to adjust to law abiding behavior. We conclude that the trial court properly declined to apply these factors in mitigation. The proof at trial demonstrated that the defendant actively participated in the crime. We also determine these factors inapplicable in light of the defendant's extensive criminal history consisting predominantly of theft offenses, as well as the fact that this offense was committed while the defendant was on parole for third degree burglary and petit larceny. Furthermore, the defendant's record reflects that he was placed on probation in 1982 for convictions for attempted second degree and third degree burglary and that his probation was revoked within nine months.

The defendant also asserts that the trial court should have considered that his conduct neither caused nor threatened serious bodily injury, T.C.A. § 40–35–113(1), that he had an excellent employment record, T.C.A. § 40–35–113(13), and that he had family responsibilities, T.C.A. § 40–35–113(13). We agree that these facts should have been considered by the trial court in sentencing the defendant. Because the record only indicates that the defendant has maintained consistent employment since February 1993, the defendant's employment history should have been given little, if any, weight. However, even considering these factors in mitigation, the record fully supports the trial court's imposition of the maximum, six-year sentence.

Relative to the trial court's denial of alternative sentencing, the defendant received a sentence of six years and is therefore eligible for probation. *See* T.C.A. § 40–35–303(a). The defendant also meets the requirements for eligibility for alternative sentencing under the Community Corrections Act because he was convicted of a property-related felony offense not involving a crime against a person. *See* T.C.A. § 40–36–106(a)(2). However, as stated earlier, the defendant, although convicted of a Class E felony, is not presumed to be a favorable candidate for alternative sentencing because he is a persistent offender. *See* T.C.A. § 40–35–102(b)(6). The trial court denied alternative sentencing based upon the defendant's lengthy history of criminal behavior, his unsuccessful completion of less restrictive measures, and his lack of truthfulness. *See* T.C.A. § 40–35–103(1)(A) and (C); *State v. Gennoe*, 851 S.W.2d 833, 837 (Tenn.Crim. App.1992) (lack of candor may be considered in denying alternative sentencing). These are all proper considerations in the determination of alternative sentencing and reflect negatively on the defendant's potential for rehabilitation. We agree with the trial court's determinations and affirm the trial court's denial of alternative sentencing.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

JONES, P.J. and SUMMERS, J., concur.