IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 13, 2000

## STATE OF TENNESSEE  v.  HENRY  MARSHALL, JR.

**Direct Appeal from the Circuit Court for Madison County**
**No. 98-130     Roy B. Morgan, Jr., Judge**

---

**No. W1999-01159-CCA-R3-CD - Filed January 26, 2001**

---

Defendant Henry Marshall, Jr. was convicted of reckless aggravated assault following a jury trial in the Madison County Circuit Court. After a sentencing hearing, the trial court sentenced Defendant as a Range I Standard Offender to a term of two years, with the Defendant to serve eleven months and twenty-nine days in the local jail, and the remaining one year and one day on supervised probation. The Defendant challenges his conviction and his sentence, raising the following issues: (1) whether the trial court erred in denying Defendant's request for an instruction on self-defense, (2) whether the trial court erred in denying Defendant's request for an instruction on the lesser-included offense of simple assault and (3) whether the trial court correctly sentenced the defendant. After a review of the record, we affirm the judgment of the trial court as modified herein.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Affirmed as Modified**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J. and DAVID G. HAYES, J., joined.

Stephen P. Spracher, Jackson, Tennessee, for the appellant, Henry Marshall, Jr.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. FACTS

On July 18, 1997, Fred Douglas, the victim and an employee of the Defendant, Henry Marshall, Jr., went to the home of the Defendant at 63 University Parkway in Jackson, Tennessee to collect his weekly pay for contract refinishing work. At some point, an argument ensued over money the Defendant owed the victim and the Defendant stabbed the victim.

Fred Douglas testified that, when he arrived at the home of the Defendant, the Defendant's wife (Rose Marshall) informed him that the Defendant was on his way home. Defendant's wife allowed Douglas to wait outside under Defendant's carport, along with Curtis Ingram, who had driven Douglas to Defendant's house. While Douglas and Ingram waited, they drank some beer.

Douglas testified that shortly thereafter, the Defendant arrived home accompanied by Curtis Hardy and Michael Taylor, other employees of the Defendant. Defendant asked Douglas to come in so Defendant could pay him. When Douglas entered Defendant's kitchen, Taylor was there helping Defendant with the money. Douglas sat at a table across from the Defendant. Defendant attempted to pay Douglas $160, which Douglas rejected. Douglas told the Defendant that he owed him $400 and that he wanted all of his money. The Defendant then told Douglas to get out of his house.

Douglas testified that the conversation became heated and that the two men were talking loud and cursing. Douglas stated that he stood up to leave and told the Defendant that he would leave once he got all of his money. Douglas told the Defendant that he would find someone else to work with, but he still wanted his $400. As Douglas moved past the Defendant to leave, the Defendant moved toward the kitchen counter. Douglas testified that, during this movement, Defendant hit the counter and came up and stabbed him. Douglas stated that he did not see the knife, but knew that Defendant had stabbed him because of all the blood. Curtis Ingram took Douglas to the hospital where he had surgery and remained for three days.

Defendant testified that, on July 18, 1997, Michael Taylor and Curtis Hardy drove him to Whiteville to pick up the payroll check from Vanderheyden Construction Company. When Defendant returned home from Whiteville, Douglas was sitting under Defendant's carport drinking beer. Defendant, Taylor and Hardy went into the kitchen. At some point, Defendant called Douglas into the kitchen to receive his pay. Defendant stated that he then paid Douglas $185. Douglas stated that the amount Defendant gave him was not right. Defendant asked Douglas to wait outside until he finished paying the others, then the two could discuss making Douglas' pay right, if it was not right.

Defendant testified that Douglas was high on beer and refused to leave. Douglas said he would not leave until he got all of his money. Again, Defendant told Douglas to wait outside and then the two could talk about making everything right. Douglas stood up, hit the table, began cursing and said he would not leave without his money. Then, Michael Taylor and Curtis Hardy tried to get Douglas out of Defendant's home. The Defendant told the jury that Douglas' behavior made Defendant's wife and grandchildren nervous.

Defendant acknowledged that he had been eating cake with a knife and fork, before calling Douglas in to receive his pay. So, when Defendant stood up to throw Douglas out of his house, he stabbed Douglas. The Defendant did not recall when or how he picked up the knife. The Defendant further asserted that he did not know that he had stabbed Douglas, until Douglas was out of the

house, and Curtis Hardy asked Defendant if he had stabbed Douglas. Defendant responded that he did not know if he had stabbed Douglas, but that Douglas had better get out of his house.

Rose Marshall testified that, on July 18, 1997, Douglas came to her home at 63 University Parkway to receive his weekly pay from her husband, the Defendant. Michael Taylor and Curtis Hardy were also at the Defendant's home to pick up their weekly pay. Douglas wanted more money for working. Douglas and Defendant began to argue over the amount Defendant owed Douglas. Douglas said he had his time written down at home. Defendant told Douglas to go get his time and come back so that the two could discuss the problem. Douglas became loud and was cursing. Defendant asked Douglas to leave. Douglas stood up, hitting the table and demanding that he receive his money immediately. Defendant continued to ask Douglas to leave, but Douglas would not leave. Rose Marshall asked Michael Taylor to take Douglas outside. Curtis Hardy was trying to hold the Defendant. Defendant was trying to get at Douglas. Rose Marshall did not know Defendant had stabbed Douglas until the argument was over and she saw blood. She further testified that Defendant had a steak knife, which he had been using to cut and eat cake. They gave the knife, which had blood on it, to the police.

Officer Melvin Allen testified that his sergeant sent him to the Defendant's home to arrest Defendant on charges of aggravated assault. Upon arriving at Defendant's home, Officer Allen explained his purpose for being there and read the Defendant his rights. The Defendant voluntarily told Officer Allen what had occurred between himself and Douglas, and that he had stabbed Douglas with a knife during a scuffle. Officer Allen testified that he felt that the Defendant was protecting his family and home. However, Officer Allen arrested the Defendant and transported him to the police station, allowing the Defendant to ride in the front seat. Officer Allen stated that he never recovered any evidence from the Defendant's home.

## II. JURY INSTRUCTIONS ON SELF-DEFENSE

The Defendant asserts that the trial court erroneously refused to instruct the jury on self-defense. A trial judge bears the duty of giving the jury "a complete charge on the law applicable to the facts of a case." State v. Phipps, 883 S.W.2d 138, 149 (Tenn. Crim. App. 1994). Furthermore, "a trial court has a duty, irrespective of any special request or contemporaneous objection by defense counsel, to instruct the jury concerning issues fundamental to the defense and essential to a fair trial." State v. Anderson, 985 S.W.2d 9, 17 (Tenn. Crim. App. 1997). This requires the trial court to ensure that the jury instructions properly reflect the facts and issues raised by the defendant. Phipps, 883 S.W.2d at 149-50.

Pursuant to Tenn. Code Ann. § 39-11-611 (a):

A person is justified in threatening or using force against another person when and to the degree *the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force*. The person must have a reasonable belief that there is *an imminent danger of death or serious bodily injury*. The

3

danger creating the belief of imminent death or serious bodily injury *must be real, or honestly believed to be real at the time,* and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force. (emphasis added).

Therefore, "encompassed within [a determination of self-defense] is whether the defendant's belief in imminent danger was reasonable, whether the force used was reasonable, and whether the defendant was without fault." State v. Lester, 1998 Tenn. Crim. App. LEXIS 672, *6, No. 03 C01-9702-CR-00069, 1998 WL 334394, at *2 (Tenn. Crim. App. at Knoxville, June 25, 1998), perm. to appeal denied, (Tenn. 1999).

Defendant's own testimony negates the theory of self-defense. In essence, Defendant's testimony was that the stabbing was an accidental consequence of him attempting to "throw" the victim out of the house. Defendant testified that he did not know he had "stuck" the victim until the victim was already out of the house, because Defendant was not aware he had the knife in his own hand.

A portion of Defendant's direct testimony is as follows:

> Q: Okay. Did he hit anything besides the table?
> A: Beg your pardon?
> Q: Did he hit anything besides the table?
> A: No, sir, he wasn't-- he just hit the table. He just hit on the table with his fist.
> Q: Okay. Now were you afraid he was going to hurt you?
> A: Well, you never know what a person's going to do, and that's when I was asking him out.
> Q: Okay. Were you afraid he was going to hurt your family?
> A: Well, if the commotion had of kept going he might have hurt somebody.
>                  * * * *
> Q: Okay. Did you intend to stick him with the knife?
> A: No, sir, I wasn't intending.
> Q: You just wanted him out?
> A: No, I didn't intend to stick him.

The proof does not show that Defendant reasonably believed that the force he used (stabbing the victim) was immediately necessary to protect against the victim's use or attempted use of unlawful force. The proof does not show that Defendant reasonably believed that he or his family members were in imminent danger of death or serious bodily injury. The trial court did not err in declining to charge self-defense, and thus Defendant is not entitled to relief on this issue.

4

### III. LESSER-INCLUDED OFFENSE INSTRUCTIONS

Next, the Defendant contends that the trial court erred when it failed to instruct the jury on the lesser-included offense of simple assault, as requested by the Defendant. Tennessee Code Annotated section 40-18-110(a) provides that a trial court must charge the jury with all lesser-included offenses included in the indictment, without any request from the defendant to do so. Tenn. Code Ann. § 40-18-110(a) (1997). Under this provision, "a trial court must instruct the jury on all lesser-included offenses if the evidence at trial is legally sufficient to support a conviction for the lesser offense." State v. Burns, 6 S.W.3d 453, 464 (Tenn. 1999) (quoting State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999)).

Here, the grand jury indictment charged that the Defendant

". . . on or about July 18, 1997, in Madison County, Tennessee, and before the finding of this indictment, did intentionally and/or knowingly cause serious bodily injury to FRED DOUGLASS by the use of a deadly weapon, to-wit: a knife, a more particular description of which to the Grand jurors aforesaid is unknown, in violation of T.C.A. § 39-13-102, all of which is against the peace and dignity of the State of Tennessee."

The indictment charged the Defendant with aggravated assault. Therefore, the Defendant was entitled to an instruction on all lesser-included offenses of aggravated assault, which the evidence supported. Tenn. Code Ann. § 40-18-110(a) (1997).

Under the Tennessee Supreme Court's decision in Burns, a trial court must involve itself in a two-step analysis, which requires the court to determine: 1) whether the offense fits the definition of a lesser-included offense, and 2) whether there exists evidence, legally sufficient to support an instruction on the lesser offense. Burns, 6 S.W.3d at 467. If the trial court finds that the answer to part one is "no," then no instruction is warranted. Id.

According to Burns, an offense is a lesser-included offense of another if:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing:
> (1) a different mental state indicating a lesser kind of culpability; and/or
> (2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of
> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Id., at 466-67.

Part (a) of this definition is essentially the same as the "statutory elements approach" for determining whether one offense is a lesser-included offense of another previously established in Howard v. State, 578 S.W.2d 83 (Tenn. 1979). Burns, 6 S.W.3d at 467. Under Howard, "an offense is necessarily included in another if the elements of the greater offense, as those elements are set forth in the indictment, include, but are not congruent with, all the elements of the lesser." Howard, 578 S.W.2d at 85. Tennessee Code Annotated section 39-13-101(a) states that "a person commits assault who: (1) intentionally, knowingly or recklessly causes bodily injury to another; . . ." Additionally, Tenn. Code Ann. § 39-13-102 (a) provides that "a person commits aggravated assault who:

(1) Intentionally or knowingly commits an assault as defined in § 39-13-101 and:
    (A) Causes serious bodily injury to another; or
    (B) Uses or displays a deadly weapon; or
(2) Recklessly commits an assault as defined in § 39-13-101(a)(1) and:
    (A) Causes serious bodily injury to another; or
    (B) Uses or displays a deadly weapon."

Pursuant to the indictment, simple assault, as defined in Tenn. Code Ann. § 39-13-101(a)(1), is a lesser-included offense of aggravated assault under part (a) of the Burns test. See Tenn. Code Ann. § 39-13-101(a)(1) (1997); Tenn. Code Ann. § 39-13-102(a)(1) (Supp. 2000). The statutory elements of assault are found within the charged offense of aggravated assault. Id. Thus, having satisfied the first step of the Burns test, we must now consider whether the evidence warranted a jury instruction on assault.

This inquiry has two parts. "First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense." Burns, at 469. "In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser- included offense without making any judgments on the credibility of such evidence." Id. "Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense." Id.

Our review results in the conclusion that the answer to the first inquiry is "no." There is no dispute in the evidence that Defendant used a deadly weapon, the knife. Defendant does not dispute that the victim suffered serious bodily injury. He simply asserts that the evidence at trial is legally sufficient to support a conviction for simple assault, which is the second inquiry made under Burns, after an offense is determined to be a lesser included offense.

6

However, even when "viewed liberally in the light most favorable to the existence of the lesser-included offense," Burns at 469, we find that no evidence exists that reasonable minds could accept simple assault as a lesser included offense in this case. Therefore, Defendant is not entitled to relief on this issue.

## IV. SENTENCING

The Defendant does not challenge the length of the two-year sentence imposed for his conviction, which is the minimum Range I sentence for a Class D felony. He does argue, and the state agrees, that the trial court erred by ordering 11 months and 29 days of the sentence to be served in the county jail pursuant to a sentence of split confinement permitted by Tenn. Code Ann. § 40-35-306.

While inmates serving a sentence of split confinement may ordinarily be required to serve up to one year in the county jail, Tenn. Code Ann. § 40-35-306(a), the legislature has provided that when the sentence is two years or less, the inmate "shall have the remainder of their original sentence suspended upon reaching their release eligibility date," Tenn. Code Ann. § 40-35-501(a)(3). In State v. Bradshaw, No. 01C01-9810-CR-00439, 1999 WL 737871, at *2, Wilson County (Tenn. Crim. App., Knoxville, Sept. 22, 1999), our Court held that when a sentence is two years, the release eligibility date for a Range I offender is 7.2 months less certain sentence credits. The Court in Bradshaw also relied on State v. John W. Hill, C.C.A. No. 01C01-9802-CC-00072, 1999 WL 92948, at *1 Franklin County (Tenn. Crim. App., Nashville, February 25, 1999), which holds that the period of time which the trial court orders to be served in jail on a sentence of split confinement cannot exceed the defendant's release eligibility date.

Accordingly, we hold the trial court erred in sentencing Defendant. The sentence is modified to reflect that Defendant shall serve a two-year sentence of split confinement, with 7.2 months, less statutory sentence credits (to which he is entitled), in the county jail and the balance on supervised probation.

## CONCLUSION

The sentence imposed by the trial court is modified to reflect that the period of confinement under the sentence is reduced to 7.2 months, less all statutory sentence credits to which the Defendant is entitled, with the balance of the two-year sentence to be served on supervised probation. In all other respects, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE

7