# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 8, 2008

## STATE OF TENNESSEE v. WILLIAM EARL STARKS

**Direct Appeal from the Circuit Court for Tipton County**
**No. 5403   Joseph H. Walker, III, Judge**

---

**No. W2007-01608-CCA-R3-CD  - Filed July 24, 2008**

---

The appellant, William Earl Starks, was found guilty by a jury in the Tipton County Circuit Court of rape of a child, and he received a sentence of twenty-two years in the Tennessee Department of Correction.  On appeal, the appellant contends that the State adduced insufficient proof of venue. Upon our review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

Periann Houghton, Sommerville, Tennessee, for the appellant, William Earl Starks.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; D. Michael Dunavant, District Attorney General, and James Walter Freeland, Jr., and P. Neal Oldham, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

In July 2006, a Tipton County Grand Jury indicted the appellant for rape of a child, namely J.D.,[1] at a time between December 23, 2005, and January 8, 2006.  At trial, the victim's mother, Tonya Michelle Dean, testified that in the latter part of 2005 and the early part of 2006, she lived at

---

[1] It is the policy of this court to refer to minor victims of sexual offenses by only their initials.

85 Harmony Drive with her parents; her daughter, the victim; her son; her cousin,[2] Bridget Ross; and Ross' boyfriend, the appellant. The residence was located in Mason which is in Tipton County. Dean said that the victim's date of birth was January 8, 1994; therefore, in December 2005, the victim was eleven years old.

Dean recalled that after Christmas 2005, she suspected that the victim was "having problems." Because of her suspicions, Dean took the victim to the doctor to "see if she was having sex." At the doctor's office, the victim saw a nurse practitioner. At a follow-up visit, Dean learned that the victim was pregnant and had herpes. Thereafter, Dean took the victim to the Memphis Reproductive Health Center for an abortion. Chief James Paris with the Memphis Police Department collected the fetus from the center so a paternity test could be performed. Dean also consented for a buccal swab to be taken from the victim's cheek for the paternity test.

Dean testified that she was "very sure" that the appellant was aware of the victim's age. Dean said that the appellant knew the victim's age from "stuff [Dean] said," the victim's mandatory bed time, and the appellant having gone with Ross to pick the victim up from middle school.

Dean acknowledged that she had a cousin, Tangie Maclin, who lived at the Flagstaff Apartments in Millington. Dean recalled that around the time of the victim's birthday or in the middle of January 2006, the victim spent the night with Maclin.

Kelly Badura testified that she was a physician's assistant at Hickory Hill Family Practice. She said that on February 8, 2006, Dean brought the then twelve-year-old victim to the office because of a complaint of vaginal discharge and to see if the victim was sexually active. Before the examination, Dean told Badura that the previous day, the victim told her that she had been raped in December by Ross' boyfriend. Badura recommended that Dean take the victim to the Shelby County Rape Crisis Center because Badura could not perform a "rape kit." However, Dean asked Badura to perform a pelvic examination because it had been six weeks since the incident.

During the examination, Badura discovered that the victim had a thin, white vaginal discharge, and her hymen was not intact. Badura tested the victim for sexually transmitted diseases. The remainder of the examination was normal. Dean scheduled a follow-up visit for the victim. When Dean and the victim returned on February 14, 2006, they learned that the victim had genital herpes. Dean asked Badura to do a pregnancy test on the victim because she had been experiencing stomach pains, nausea, and vomiting. The pregnancy test was positive.

Dr. T. Russell Horton testified that he worked at the Memphis Center for Reproductive Health. He opined that when the victim came to the center on February 21, 2006, she was eight weeks and four days pregnant. However, he said that the estimation was based on an ultrasound and that the margin of error was approximately one week, meaning that conception occurred in late

---

[2] Dean testified that Ross was raised by Dean's parents. Therefore, Ross is also referred to as Dean's sister or the victim's aunt.

December 2005 or early January 2006. Dr. Horton said that Chief Paris collected the specimen from the procedure for further testing.

James C. Paris, the chief of police of the Mason City Police Department, testified that in February 2006, he began investigating the victim's rape. On February 16, 2006, he went to see the appellant and requested that he come to the police department to talk. The appellant asked if he could come the next day, and Chief Paris agreed. The following day, the appellant voluntarily came to the Mason Police Department to give a statement. After he was advised of his rights, the appellant said that his birthday was April 20, 1984. The appellant conceded that he had sexual relations with the victim approximately three weeks to one month prior to the interview. The appellant told Chief Paris that the victim called him and asked him and his friend "Drickus" to visit her at the Flag Manor Apartments in Millington. The appellant said that when he arrived at the apartment, the victim started rubbing his chest and private area. He said he asked the victim to stop, and the victim said, "Why?" The appellant told Chief Paris that he and the victim argued about having sex. The appellant said that he and the victim had sexual intercourse without a condom for less than a minute. The appellant stated that "it didn't feel right, so I stopped." He and the victim fell asleep on the floor. The appellant told Chief Paris that the victim "has sex with more than me." The appellant said that he believed the victim was sixteen years old.

Chief Paris said that on February 21, 2006, he collected the victim's aborted fetus from the Memphis Center for Reproductive Health so it could be processed for DNA. Additionally, Chief Paris took voluntary buccal swabs from the victim and the appellant. Chief Paris took the DNA materials he collected to Stephen Conn at a testing facility on American Way in Memphis.

Stephen Conn testified that he is the owner and administrative director for Medical Testing Resources in Memphis. He explained that his company collects DNA samples and sends the samples to Chromosomal Laboratories in Phoenix, Arizona, for testing. He retrieved samples in the instant case from Chief Paris, then he forwarded the samples to Dr. Vince Miller at Chromosomal Laboratories.

Dr. Roger Vincent Miller, the Chief Technical Officer and Vice-President of Chromosomal Laboratories, testified that his company is accredited to perform paternity testing. In the instant case, testing revealed the probability of the appellant's paternity of the victim's child to be over 99.999 percent.

The victim testified that she was born on January 8, 1995. When the offense happened, she was in sixth grade at Crestview Middle School in Covington, and she was living with her mother; grandparents; brother; Ross; and Ross' boyfriend, the appellant, at 85 Harmony Way in Mason in Tipton County. The victim recalled that during Christmas break 2005, there were times when both her mother and Ross were at work, but the appellant was at home. The victim said that during one of those times, she was in her mother's room when the appellant came in and told her to "come here." She went into Ross' room with the appellant, and they had sexual intercourse. The victim stated that after the rape, she took a bath, but she did not tell anyone about the incident. Later, the

victim went to different doctors and eventually had an abortion. The victim said that she had stayed at her cousin Tangie's house, but she did so only in January 2006, not in December 2005. She said that the appellant did not come to Tangie's apartment when she was there.

The appellant testified that his date of birth was March 20, 1984, and that he was twenty-two years old. He said that in Christmas 2005, he was living with his girlfriend Ross and her family "[o]ff and on." The appellant stated that in February 2006, Chief Paris came to the appellant's stepmother's house in Gallaway, Tennessee, and asked the appellant to come to the police station to make a statement. The appellant asked if he could come the next day, and Chief Paris agreed.

The following day, February 17, 2006, the appellant went to the police station and gave a statement. In his statement, he told Chief Paris that he had sex with the victim one time. The appellant testified that one night while he was at his stepmother's house, the victim and her cousin called and asked if the appellant and his friend Quadrickus Buster would come to the cousin's apartment in Millington.[3] The appellant said that he initially refused, but, at the urging of his friend, he ultimately agreed to go. The appellant stated that the victim; her cousin, Tangie Macklin; and Henrietta Simpson came to get him and Buster, and they went to Flag Manor Apartments. The appellant said that while at the apartment in Millington, he had sex with the victim. The appellant said that he did not use a condom and that he "never even finished." The appellant explained that he freely admitted having sex with the victim because he did not think he had done anything wrong, stating that he believed the victim was seventeen years old. The appellant said that the incident was a mistake, but he acknowledged that it was a knowing act.

The appellant opined that the incident happened in late December or early January. He said that during the interview, he told police that he had sex with the victim about three weeks to one month prior to the interview. The appellant explained that he said "about" due to the fact that he could not remember the exact date of the incident because it "was something I was trying not to remember, because I was wrong for my actions." The appellant stated that while he did not deny having sex with the victim, he did not have sex with her in Tipton County.

The jury found the appellant guilty of rape of a child. On appeal, the appellant questions "[w]hether the evidence in the record is insufficient as a matter of law to sustain a conviction in this cause based upon the proof regarding venue."

## II. Analysis

The appellant does not contest that he committed the offense. Indeed, there was ample proof at trial to support his conviction for rape of a child. See Tenn. Code Ann. § 39-13-522(a) (2003). Instead, the appellant challenges the proof establishing venue. Article I, section 9 of the Tennessee Constitution provides that in all criminal prosecutions by indictment or presentment, the accused has a right to a speedy, public trial by an impartial jury of the county in which the crime was committed.

---

[3] Millington is located in Shelby County, Tennessee.

Tenn. Const. art. I, § 9; see also Tenn. R. Crim. P. 18. Proof of venue is necessary to establish the court's jurisdiction. See Harvey v. State, 376 S.W.2d 497, 498 (Tenn. 1964); Hopson v. State, 299 S.W.2d 11, 14 (Tenn. 1957). However, because venue is not an element of the offense, the State need only prove by a preponderance of the evidence that the charged offense was committed in the county in which the defendant is being tried. See Tenn. Code Ann. § 39-11-201(e) (2003); State v. Bennett, 549 S.W.2d 949, 949-50 (Tenn. 1977); State v. Anderson, 985 S.W.2d 9, 15 (Tenn. Crim. App. 1997). Venue may be proved by circumstantial evidence, and even slight evidence is sufficient if it is uncontradicted. Bennett, 549 S.W.2d at 950. In determining venue, the jury is entitled to draw reasonable inferences from the evidence. State v. Johnson, 673 S.W.2d 877, 882 (Tenn. Crim. App. 1984).

At trial, the victim testified that the offense occurred in Mason in Tipton County at the home where she and the appellant were living at that time. The appellant testified that the offense occurred in Shelby County. On appeal, the appellant argues that "[t]he only proof elicited by the state to establish venue was the uncorroborated testimony of the victim." The jury heard the proof and, as was its prerogative, accredited the testimony of the victim regarding venue. See Anderson, 985 S.W.2d at 15. We conclude that the proof adduced at trial sufficiently established that venue was properly in Tipton County.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE