IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 8, 2001

## STATE OF TENNESSEE v. THOMAS R. JOHNSON

**Appeal from the Criminal Court for Shelby County**
**No. 99-10448, 49    Arthur T. Bennett, Judge**

---

**No. W2000-00611-CCA-R3-CD  - Filed June 8, 2001**

---

The issue on direct appeal is whether the trial court erred in not sentencing the Defendant under the Tennessee Community Correction Act.  After a review of the entire record on appeal, the briefs of the parties and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

L. TERRY LAFFERTY, SR. J., delivered the opinion of the court, in which ALAN E. GLENN, J., joined. DAVID H. WELLES, J., not participating.

Robert R. Ross, II, Memphis, Tennessee, for the appellant, Thomas R. Johnson.

Paul G. Summers, Attorney General and Reporter; Laura E. McMullen, Assistant Attorney General; and Lee Coffee, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On February 15, 2000, Defendant entered two pleas of guilty to the offenses of (1) the unlawful possession of a controlled substance with intent to sell, to wit: marijuana over 10 pounds; and (2) the unlawful possession of a controlled substance with intent to sell, to wit: powder cocaine over .5 grams.  Defendant agreed to pay a fine of $10,000 and be sentenced to six (6) years in the local workhouse for the marijuana offense.  As to the cocaine charge, Defendant agreed to pay a fine of $2,000 and confinement for eight (8) years in the Tennessee Department of Correction.  Both sentences were to be served concurrently and the request for a suspended sentence to be determined by the trial court.

The guilty plea transcript reflects that on January 28, 1999, Defendant was stopped on I-240 in Shelby County speeding more than 70 miles per hour in a 55 mile per hour speed zone.  A drug dog alerted the officer to the possible presence of drugs in the quarter panel of the trunk.  Defendant grew nervous and gave the officer permission to search the vehicle.  A search of the quarter panel

revealed six compressed bricks of marijuana, which weighed 102 pounds. A search of a shaving kit revealed 1.2 grams of powder cocaine. Defendant had $787.00 in cash on his person. Defendant advised the officer he was traveling from Dallas to New York City and the money had been given to him for hotel and gas expenses.

SENTENCING HEARING

At the sentencing hearing of March 1, 2000, Defendant, age 56, testified he is a resident of St. Charles, Illinois. Defendant has no criminal history. Defendant commenced his testimony by stating, "Well, my taxes were due and I was really short of money and I didn't have any money and somebody offered me -- doing it without thinking and doing something very stupid." Defendant advised the trial court he was fishing in Lake Fork, Texas. "And I ran into a guy and I was smoking a joint at the time and he asked me if I wanted to do something, and without thinking I -- ." After much prodding by the trial court, the trial court was able to finally elicit from Defendant the facts as to how and why he was transporting drugs to New York City.

Prior to Defendant's arrest, he had taken his car and boat to Dallas, Texas, to do some bass fishing. While fishing on the lake, he met two persons, "Carlos" and "Juan," whom he had never met before. Defendant was smoking a marijuana cigarette at the time he met these two men. They approached him "about doing something." Defendant returned to his home in Illinois and "they" contacted him by telephone. Carlos sent Defendant some money so he could come to Dallas. Defendant purchased a plane ticket to Dallas and agreed to meet Carlos at the airport. Defendant picked up a 1991 Honda Accord station wagon with New Jersey plates and agreed to deliver the marijuana to a parking lot at Yankee Stadium in New York. Defendant was to receive about $1,000 for this delivery.

Eric Johnson, age 33, testified on his father's behalf. He described his father's mental and physical health as not real good. He stated his father assists him in taking care of his daughter who has cerebral palsy. As to the offense, the son testified his father got "caught in a moment and he ended up getting high with these folks in Texas and they talked him and suckered him into, "Hey, okay, you can make a little easy money, all you've got to do is make a drive." His father knows the pain he has caused the family and realizes it was a terrible mistake.

Although not marked as exhibits to the sentencing hearing, the record contains a number of letters from relatives and friends in support of Defendant's application for a suspended sentence. The record also contains a copy of the pre-sentence report. The pre-sentence report revealed Defendant has no criminal past. He is currently retired from Com Ed, in Illinois, as a lineman after working 28 years. The report established that Defendant has a history of drug abuse. In 1993, Defendant received 28 days of drug and alcohol treatment at Centret Dupage Hospital. He has an impaired left leg, his current mental health is fair and he is suffering from stress due to the current case. Defendant first used alcohol at the age of 15 and his last use was in 1993. He first used marijuana at the age of 22 and cocaine at the age of 32. He has not used any drugs since his arrest.

At the conclusion of Defendant's testimony, the trial court made a revealing comment:

"Why didn't you tell me that in the beginning? Say, I went down there and I met this guy and we got to talking about the drugs and he convinced me that it would be profitable and I would get so much out of it, so and so, if I would deliver some drugs, so I gave him the address, I decided to do it and get into this drug trade and bring it back. So when I went back to Illinois they were to send me a notification. Tell me. See, you're up here pulling my leg. You may step down."

In denying Defendant a suspended sentence, the trial court was convinced Defendant was not truthful, and even at the time of the hearing, he was still "trying to hoodwink the Judge on what really happened." Also, the trial court found Defendant to be a major deliverer of marijuana, over a-hundred-and-two pounds. Further, Defendant was not entitled to a suspended sentence due to the amount of the marijuana, because it would depreciate the seriousness of the offense and the deterrent effect. The trial court believed in essence, Defendant's untruthfulness and the seriousness of the offense outweighed the letters of support, lack of criminal history and mitigation factors for the granting of a suspended sentence.

## LEGAL ANALYSIS

Defendant asserts that the trial court abused its discretion in weighing the totality of the circumstances in denying an alternative sentence. The State contends the trial court properly concluded that probation was inappropriate.

When an accused challenges the manner of service of a sentence, such as the denial of an alternative sentence, this Court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a *de novo* review of a sentence, this Court must consider: (a) the evidence, if any, received at trial and sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating and enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102,-103,-210; *State v. Thomas,* 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately

-3-

supported by the record, then we may not modify the sentence even if we would have preferred a different result. *State v. Fletcher,* 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The record reflects that Defendant was accused of the commission of two Class B felonies, which would remove from him the presumption that he is a favorable candidate for alternative sentencing. Tenn. Code Ann. § 40-35-102(5). However, the State agreed to a lesser plea of unlawful possession of marijuana with intent to sell, to wit: over ten (10) pounds, a Class C felony. The agreed confinement period would be six (6) years. The State acknowledged that this gave Defendant an opportunity to persuade the trial court that an alternative sentence would be considered. However, Defendant's conviction for the cocaine offense remained a Class B felony. Thus, Defendant would be entitled to the presumption of an alternative sentence in the marijuana offense. Thus, the burden is on the State to establish "evidence to the contrary" which counters Defendant's presumption.

Guidance as to what may constitute "evidence to the contrary" is found in Tennessee Code Annotated § 40-35-103(1997), which states that a trial court may order confinement when:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the Defendant.

From this record, it is clear that subsections -103(1)(A) and (C) do not apply to this case. *See State v. Hooper,* 29 S.W.3d 1, (Tenn. 2000).

It is obvious from the record that Defendant's untruthfulness or lack of candor and the seriousness of the offense is the reason the trial court believes the Defendant should not receive an alternative sentence. The lack of truthfulness or candor on the part of a defendant is a permissible factor for the trial court's determination whether a defendant is entitled to an alternative sentence. *See State v. Anderson,* 985 S.W.2d 9, 21 (Tenn. Crim. App. 1997); *State v. Dykes,* 803 S.W.2d 250 (Tenn. Crim. App. 1990); *State v. Morton,* 639 S.W.2d 666, 669 (Tenn. Crim. App. 1982). We agree with the State that Defendant's stipulation to the facts surrounding the arrest was undisputed. The record certainly reveals that the trial court was becoming exasperated with Defendant's lack of candor. From Defendant's initial explanation of his involvement, it took quite a process to obtain Defendant's full complicity in the transporting of a large amount of marijuana from Texas to New York City. We find Defendant's lack of truthfulness or candor a viable factor for the trial court to deny an alternative sentence.

To deny an alternative sentence or probation on the circumstances of the offense, the crime must be "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree" and the nature must outweigh all factors favoring probation. *State v. Hartley,* 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991). Thus, we concur with the trial court's reasoning that the seriousness of the offense was a factor to deny an alternative sentence. Defendant, a resident of Illinois, entered into a conspiracy with "Carlos" and "Juan" to transport over 100 pounds of marijuana from Dallas, Texas, to New York. In line with a pre-arranged plan, Defendant received money from Texas, flies to Dallas, meets his co-conspirators, picks up a 1991 Honda Accord with New Jersey plates, and is given expense money for the trip to safely deliver marijuana. Although Defendant does not have a history of criminal convictions or arrests, the record reveals Defendant is a long standing abuser of marijuana and cocaine. It seems Defendant's use of marijuana led to his involvement into this particular transportation business.

The trial court believed that deterrence was a viable factor in denying an alternative sentence. Proof in a case may be sufficient to justify denial of an alternative sentence on the sole ground of deterrence. *See State v. Hooper,* 29 S.W.3d 1, (Tenn. 2000). In *Hooper,* the Supreme Court stated:

> Because the "science" of deterrence is imprecise at best, the trial courts should be given considerable latitude in determining whether a need for deterrence exists and whether incarceration appropriately addresses that need. Accordingly, we will presume that a trial court's decision to incarcerate a defendant based on a need for deterrence is correct so long as any reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes.

It is obvious that Defendant made a conscious decision to engage in transporting a substantial amount of marijuana from Texas to New York and was motivated by a desire to profit or gain from this criminal behavior. We find the factor of deterrence applicable to the facts in this case.

Overall, the trial court was unimpressed with Defendant's demeanor and truthfulness and candor. This Court is not in a better position to judge Defendant's demeanor, and thus, we are unable to conclude the trial court erred in denying an alternative sentence. Defendant has failed to establish that his denial of an alternative sentence was improper.

Defendant argues that he is probably one of the better candidates in Shelby County for probation. He contends that he was not lying to the trial court, but maybe he was evasive in his answers.

The determination of whether Defendant is entitled to an alternative sentence and whether Defendant is entitled to full probation are different inquiries. These inquiries require a different burden of proof. Thus, even though the defendant, especially as to the marijuana offense, a Class C felony, is presumed to be a favorable candidate for alternative sentencing, the defendant has the

burden of establishing his suitability for total probation. Tenn. Code Ann. § 40-35-303(b)(1994 Supp.); *State v. Boggs,* 932 S.W.2d. 467, 477 (Tenn. Crim. App. 1996). To meet the burden of establishing suitability for full probation, the defendant must demonstrate that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *Id.* Citing *State v. Bingham,* 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), *perm. app. denied,* (Tenn. 1995).

In determining one's suitability for full probation, the court may consider the circumstances of the offense, the defendant's potential or lack of potential for rehabilitation, whether full probation will unduly depreciate the seriousness of the offense, and whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes. Tenn. Code Ann. § 40-35-210(b)(4), - 103(5), -103(1)(B) (1990). Denial of probation may be based solely upon the circumstances of the offense when they are of such a nature as to outweigh all other factors favoring probation. *Id.* Citing *State v. Fletcher,* 805 S.W.2d 785, 788-89 (Tenn. Crim. App. 1991). We find the trial court's analysis as to why Defendant should be denied an alternative sentence would apply as equally to Defendant's request for full probation. Defendant has failed to meet his burden in establishing his suitability for full probation.

We affirm the trial court's judgment.

_____
L. TERRY LAFFERTY, SENIOR JUDGE