IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 4, 2016

## STATE OF TENNESSEE v. TRISTAN DELANDIS GRANT

Appeal from the Circuit Court for Tipton County
No. 8328    Joseph H. Walker, III, Judge

No. W2016-00091-CCA-R3-CD – Filed December 7, 2016

The defendant, Tristan Delandis Grant, was convicted by a Tipton County Circuit Court jury of aggravated robbery, a Class B felony, and theft under $500, a Class A misdemeanor. The trial court merged the theft conviction into the aggravated robbery conviction and sentenced the defendant to eight years in the Department of Correction. On appeal, the defendant challenges the sufficiency of the convicting evidence. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and TIMOTHY L. EASTER, JJ., joined.

Bryan R. Huffman, Covington, Tennessee, for the appellant, Tristan Delandis Grant.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Jason R. Poyner and James Walter Freeland, Jr., Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The State's proof at trial showed that the defendant, along with two co-defendants, De'onte Kashun Alston and Clifford Earl Watkins, robbed a Domino's Pizza employee, Christian Cummings, around 11:00 p.m. on January 25, 2015. Another individual, Jevante Dyson, procured the pellet gun used in the robbery from another individual and then served as the getaway driver for the defendant and co-defendants. Mr. Dyson pled guilty to a reduced charge of facilitation of aggravated robbery in exchange for his

testimony. The two co-defendants pled guilty to the reduced charge of facilitation of aggravated robbery as well.

At trial, Christian Cummings, the victim, testified that he was working at the Domino's Pizza in Covington on January 25, 2015. Between 11:00 and 11:30 p.m., three people wearing bandanas around their faces and jackets or hoodies robbed him while he was alone in the store. He did not recognize any of the robbers because he could not see their faces. He was near the oven when they entered, and he did not notice their presence until they were behind the counter. One of the robbers told him to get on the ground, and he complied. The victim could not remember what that robber was wearing but recalled he had a long, grayish-black gun, which he pointed at the victim. The store had a video surveillance system, and the victim identified photographs retrieved from the system that showed the robbers in the store.

The victim testified that the robbers ordered him to open the safe. He tried to explain that the safe was on a time-delay, but they wanted him to open it anyway. He attempted to open it and again informed them that it was time-delayed, at which point the tallest of the three robbers hit him. The robbers then demanded him to open the cash drawer. He tried to give them the key to open it, but the tallest robber hit him again so he opened the cash drawer himself. The robbers took approximately $75 from the cash drawer. The robbers then asked if there was any other money in the store, and they had the victim open the delivery drivers' boxes from which they took all of the money. It was later determined that over $300 was taken during the robbery. After removing the money, the robbers left out the back door of the store, and the victim called the police.

The victim could not identify any of the robbers because of the bandanas covering their faces. However, he could determine their relative heights and that they were all African-American. One of the robbers was about 6'1" or 6'2" tall, one was about 5'9" or 5'10" tall, and the shortest robber was about 5'6" tall. The shortest robber was the one holding the gun. The State played the video of the robbery for the jury.

Jevante Dyson testified that he met the defendant, De'onte Alston, and Clifford Watkins when he moved in with Carlin Burton and her boyfriend, Markedis Briars, and Mr. Briars introduced them. On the evening of January 25, 2015, Mr. Dyson met with the defendant, Mr. Alston, and Mr. Watkins at Mr. Watkins' home, which was next door to Ms. Burton's residence. After drinking some alcohol, the group came up with the idea of robbing the Domino's Pizza. Mr. Dyson borrowed a pellet gun from Mr. Briars, which Mr. Briars had stolen from Walmart, to use in the robbery. The group drove to the Tennessee Technology Center, which was near Domino's, and the defendant, Mr. Alston, and Mr. Watkins left to rob Domino's while Mr. Dyson stayed in the car. The three men returned five or ten minutes later with Mr. Watkins carrying a bag of money. They

returned to Mr. Watkins' house and split up the money, each getting $80 or $85. The defendant gave Mr. Dyson the gun, and Mr. Dyson returned it to Mr. Briars who hid it somewhere.

Mr. Dyson testified that he gave the gun to the defendant before the three robbers left the car. Mr. Dyson identified the defendant as the person holding the gun in a photograph taken from the Domino's security cameras. He also identified Mr. Watkins and Mr. Alston in photographs taken from the security cameras. Mr. Dyson said that Mr. Watkins is about 6' tall, Mr. Alston is about 5'10", and he is about 5'6".

De'onte Alston testified that he was involved in the robbery of a Domino's Pizza on January 25, 2015. He met with the defendant, Clifford Watkins, and Jevante Dyson at Mr. Watkins' home that evening and, after drinking some alcohol, they decided to rob the Domino's Pizza. Mr. Alston had been to Domino's earlier that evening and saw that there were only two employees working. It was his idea to rob the store.

Mr. Alston testified that the four of them drove in his car to Tennessee Technology Center, which was close to Domino's. Mr. Dyson called the store while they were en route and placed a fake order to get the delivery driver out of the store. Mr. Dyson had a gun that he had borrowed from Mr. Briars, but he gave the gun to the defendant before the defendant, Mr. Alston, and Mr. Watkins got out of the car to commit the robbery. Mr. Alston admitted that he hit the victim once or twice because he was moving too slowly. The robbers took $320 from the store, returned to the car and then to Mr. Watkins' house. They split up the money, each receiving approximately $80, and returned the gun to Mr. Briars. Mr. Alston and Mr. Dyson went to Mr. Briars' house later that night.

Mr. Alston identified the defendant as the person holding the gun in photographs taken from the Domino's security camera. Mr. Alston also identified himself and Mr. Watkins as the other robbers shown in the photographs. Mr. Alston said that Carlin Burton is his cousin. He said that he is 5'10" tall.

Clifford Watkins testified that the defendant, Mr. Alston, and Mr. Dyson came to his house on January 25, 2015, to visit and drink alcohol. Mr. Alston brought up the idea of robbing Domino's Pizza and went to pick up a pizza so he could see how many people were working there. While Mr. Alston was gone, Mr. Dyson got a BB gun from Mr. Briars and, when he returned, roles were discussed for perpetrating the robbery. The group drove to the Tennessee Technology Center, from where they walked through the woods to Domino's. Mr. Dyson remained in the car. Once inside the store, Mr. Watkins served as a lookout, the defendant held the gun, and Mr. Alston hit the victim. They took

money from the cash drawer and from the driver boxes in the back of the store. After the robbery, he went to Mr. Briars' house and told him "what we had just did."

Mr. Watkins identified the defendant as the person holding the gun in photographs taken from the Domino's security camera. Mr. Watkins also identified himself and Mr. Alston as the other robbers shown in the photographs. Mr. Watkins testified that he is 6'3" and the tallest of the group.

The State asked that Mr. Watkins, Mr. Alston, and the defendant stand side-by-side "as physical exemplars as to their relative height." Mr. Watkins and Mr. Alston stood by the defendant, but it is not clear in the record whether the defendant stood or remained seated.

Carlin Burton testified that Mr. Briars is the father of her child and was her boyfriend at the time of the robbery. On the night of the robbery, the defendant, Mr. Alston, Mr. Watkins, and Mr. Dyson were at Ms. Burton's house for fifteen to twenty minutes talking to Mr. Briars, while she was in the back room taking care of her baby. A couple of hours later, Mr. Alston and Mr. Dyson came back to her house, and she heard Mr. Alston say, "[W]e did it." She had not heard anything about a robbery of a Domino's Pizza until that point.

Ms. Burton recalled that Mr. Alston and Mr. Dyson brought a black bag with them when they returned to her house. She never saw Mr. Briars with the black bag. However, an unspecified amount of days after the robbery, Mr. Briars asked her to look for the black bag in her bedroom and take it to the home of her cousin, Jordan Jackson, who lived on the street behind her. She never looked inside the bag, and only she and Mr. Briars had access to her room. Mr. Briars said that he had gotten the bag from Mr. Alston. Ms. Burton said that she did not know that Mr. Briars was in the possession of a pellet gun. She did not know the police were looking for the bag or its contents, but she was aware that a robbery had occurred. Neither she nor Mr. Briars received any proceeds from the robbery.

Following the conclusion of the proof, the jury convicted the defendant of aggravated robbery and theft under $500 as charged in the indictment. The trial court merged the theft conviction into the aggravated robbery conviction and sentenced the defendant to eight years' incarceration. The defendant appealed.

## ANALYSIS

On appeal, the defendant challenges the sufficiency of the evidence at trial, arguing there was insufficient evidence to corroborate the testimony of his accomplices.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). The same standard applies whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

A criminal offense may be established entirely by circumstantial evidence. State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010). It is for the jury to determine the weight to be given the circumstantial evidence and the extent to which the circumstances are consistent with the guilt of the defendant and inconsistent with his innocence. State v. James, 315 S.W.3d 440, 456 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 380-81 (Tenn. 2011) (adopting the federal standard of review for cases in which the evidence is entirely circumstantial).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523, 527 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with

which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

"An accomplice is defined as a person who knowingly, voluntarily and with common intent unites with the principal offender in the commission of the crime." State v. Anderson, 985 S.W.2d 9, 16 (Tenn. Crim. App. 1997) (citing State v. Perkinson, 867 S.W.2d 1, 7 (Tenn. Crim. App. 1992)). A criminal defendant in Tennessee cannot be convicted solely on the uncorroborated testimony of an accomplice. State v. Bane, 57 S.W.3d 411, 419 (Tenn. 2001) (citing State v. Stout, 46 S.W.3d 689, 696 (Tenn. 2001); State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994)); State v. Robinson, 971 S.W.2d 30, 42 (Tenn. Crim. App. 1997). This principle has been described as follows:

> "[T]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence. The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration."

Bigbee, 885 S.W.2d at 803 (quoting State v. Gaylor, 862 S.W.2d 546, 552 (Tenn. Crim. App. 1992)). Whether sufficient corroboration exists is for the jury to determine. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). The jury determines "the degree of evidence necessary to corroborate the testimony of an accomplice, and it is sufficient 'if there is some other evidence fairly tending to connect the defendant with the commission of the crime.'" State v. Anderson, 985 S.W.2d 9, 16 (Tenn. Crim. App. 1997) (quoting Clapp v. State, 30 S.W. 214, 217 (Tenn. 1895)).

For purposes of this case, aggravated robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" that is "[a]ccomplished . . . by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" Tenn. Code Ann. §§ 39-13-401(a), -402(a)(1). The defendant does not challenge that an aggravated robbery was committed

in this case; he only contests the sufficiency of the corroboration of the other robbers' testimony that he participated in it.

The defendant asserts that "there was no corroboration whatsoever" in this case. He claims that the victim's testimony, Ms. Burton's testimony, and the photographs and video from the crime scene are "insufficient to identify [his] participation in the aggravated robbery." We disagree. It was for the jury's determination whether sufficient corroboration existed. The jury heard testimony from Carlin Burton that the defendant, Mr. Alston, Mr. Watkins, and Mr. Dyson were at her house for fifteen to twenty minutes talking to Mr. Briars in the timeframe shortly before the robbery, and then two of the four men were at her house in the timeframe after the robbery saying, "[W]e did it." The jury heard testimony from Mr. Alston, Mr. Watkins, and Mr. Dyson that only three of the four robbers entered the Domino's – Mr. Alston, Mr. Watkins, and the defendant. The victim testified that there were only three robbers in the store, as was confirmed by the photographs and video from the security camera.

Mr. Alston, Mr. Watkins, and Mr. Dyson all testified that the defendant held the gun in the store. The victim stated that the gunman was the shortest member of the group at about 5'6" tall. The video of the incident also shows that the gunman was the shortest member of the group. The co-defendants were asked to stand next to or behind the defendant, from which the jury could ascertain their relative heights.

Moreover, the video and photographs from the security camera were exhibits at trial and thus available for the jury to view and compare the defendant's height, build, and complexion to that of his co-defendants and to the robbers depicted in the video and photographs.

We reiterate, "[o]nly slight circumstances are required to furnish the necessary corroboration." State v. Little, 402 S.W.3d 202, 212 (Tenn. 2013). In summary, there was enough evidence in the form of the victim's and Ms. Burton's testimonies, and the video and photographs from the security camera from which the jury could determine that the testimony of the co-defendants was sufficiently corroborated.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE

-7-