IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 24, 2018 Session

## WILLIAM BOATWRIGHT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 102783      G. Scott Green, Judge**

_____

### No. E2017-00211-CCA-R3-PC
_____

The Petitioner, William Boatwright, appeals from the Knox County Criminal Court's denial of his petition for post-conviction relief from his especially aggravated robbery, aggravated robbery, aggravated burglary, and two aggravated assault convictions, for which he is serving a forty-seven-year sentence. The Petitioner contends that he received the ineffective assistance of counsel. We reverse the judgment of the post-conviction court and remand the case for additional findings of fact and conclusions of law.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment Reversed; Case Remanded**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Joshua Hedrick, Knoxville, Tennessee, for the appellant, William Boatwright.

Herbert H. Slatery III, Attorney General and Reporter; Jeffery D. Zentner, Assistant Attorney General; Charme P. Allen, District Attorney General; and Leslie Nassios, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case arises from the Petitioner's participation in a home invasion of an apartment in which numerous people were present. *See State v. William Ray Boatwright*, No. E2012-00688-CCA-R3-CD, 2013 WL 775787 (Tenn. Crim. App. Feb. 28, 2013), *perm. app. denied* (Tenn. June 12, 2013). After the trial, the trial court merged the aggravated assault convictions with the especially aggravated robbery conviction and sentenced the Petitioner to forty-nine years' incarceration. *Id.* The Petitioner appealed, and this court summarized the facts as follows:

This case arises out of a home invasion/robbery that occurred very early on the morning of May 22, 2008, at the Knoxville apartment of Christy Hines. Hines was at home with her mother, Jamesina Thompson; her friend, Alora Williams; her cousin, Stephon Matthews; and her two young children when someone knocked on the door. Matthews cracked the door open and a group of armed, masked men rushed in, terrorizing the occupants, robbing Matthews of his cash, and taking a carton of cigarettes and a camcorder from the apartment. Just before leaving, one of the men, whom Williams later identified as the defendant, delivered a violent blow with his gun to Matthews' head, fracturing his skull. The Knox County Grand Jury subsequently returned a five-count indictment charging the defendant with especially aggravated robbery, aggravated robbery, especially aggravated burglary, and two counts of aggravated assault.

At the defendant's trial, Stephon Matthews testified that in May of 2008, he was seventeen years old, a high school football player, and living with his cousin, Christy Hines, in her Knoxville apartment. On the night of the burglary, he and his family were at home when someone knocked on the door. They asked who it was, and a person answered "Mike." He opened the door and four men rushed in, knocking him to the floor as they "slung the door open." He heard someone say, "[C]'mon Strong," and the men twice searched his pockets for his money as he lay on the floor. They were unable to get it, so he took $200 out of his pocket and threw it on the table for the men to take, saying, "[H]ere." Before the intruders left, one of the men who was standing over him said, "I'm sorry I've got to do this to you, Cuz," and then hit him in the head with a gun. Matthews testified that his skull was fractured, which required him to undergo emergency surgery and spend a week in the hospital. He said that his memory was impaired by his head injury and that he was no longer able to play football.

On cross-examination, Matthews acknowledged that his testimony at the preliminary hearing was that the man who struck him was wearing a blue bandana.

Jamesina Thompson testified that on May 21, 2008, she and her daughter, Christy Hines, spent the afternoon sitting outside with her daughter's two children and a "bunch of little kids" from the community holding a dance contest for the children, which her daughter recorded on her camcorder. During that time, the defendant arrived with three other men, said hello to them, and then went up the steps to the neighbors that he was visiting.

Later that night, her daughter's friend, Alora Williams, came over to visit and Matthews, who had been out, returned home. Thompson testified that Hines was "getting her hair done" and the rest of them were watching television when someone knocked at the door. She twice asked who it was, and each time the person replied, "Mike." She explained that she asked twice because the next-door neighbor was named Mike, but he was Caucasian and she knew that it was not his voice at the door. Suspicious, she peeked out the window and saw that the person was not standing in front of the door where she could see him but instead beside the door wearing a hood. In the meantime, Matthews had gotten up to answer the door. She and her daughter both called out a warning to him, but he moved fast and they were too late to prevent him from opening the door, with his foot behind it so that he could peek out. As soon as he did so, there was a "big kaboom" as the door was burst all the way open.

Thompson testified that she got behind a large speaker in the living room and remained there without moving the entire time that the intruders were in the home. She heard someone say, "[Y]ou already know what time it is," followed by "[I]s there anybody else in here? If there's anybody else in here, come out now or I'll shoot everybody in here." At that point, Williams, who had fled from the room when the door burst open, came from around the corner and stood against the living room wall. After that, Thompson heard people rummaging back and forth throughout the home, one of the intruders call her granddaughter by name as he asked her if anyone else was in the apartment; someone asking her granddaughter why the light was so dim and telling her not to cry; Matthews['] volunteering to give up his money and one of the intruders saying, "[T]hat's good"; one of the intruder[']s instructing another one to get a box of Newport cigarettes; the sound of feet moving away; a period of silence; one of the intruder[']s saying, "[S]orry I got to do this to you, Cuz"; and then the sound of Matthews['] groaning.

Thompson testified that after the intruders left, Williams ran to shut the front door and she went to assist Matthews, who had "staggered up from the floor" and was lying slumped on the couch with blood running down his face. About eight or nine minutes later, Matthews' voice became garbled and he appeared to be having a seizure, so they called an ambulance, which transported him to the hospital for emergency surgery. Thompson testified that, in addition to Matthews' cash and the carton of cigarettes, the intruders took the camcorder that her daughter had been using earlier that afternoon. She said that the next day they found the camcorder, which had been broken "to shreds," behind a neighbor's house.

-3-

Thompson testified that she informed the police officers who investigated the crimes that one of the [intruders'] voices sounded very familiar to her. After the police left, she found two slugs on the carpet, which she turned over to the police. Thompson said that she heard a clicking sound at the time one of the intruders threatened to shoot everyone in the apartment, and she therefore assumed that the slugs fell from his gun at that time.

Christy Hines testified that at the time of the burglary she made money by selling crack cocaine from her Knoxville apartment. She said that on the afternoon of May 21, 2008, she was sitting outside in the parking lot with her mother and her children "making her sales" and videotaping the children when the defendant arrived with James Cade and two other men. She stated that the defendant and Cade remained at the complex for a couple of hours and saw her making drug sales during that time.

Hines testified that she, her family, and her friend, Alora Williams, were inside her apartment later that night when a man wearing a hood knocked at the door and identified himself as "Mike." She said she was standing right behind her cousin when he cracked the door open, and she saw James Cade pulling a blue bandana over his face just before he and the other men rushed into the apartment. She stated that she got down on the floor between the wall and the couch, where she heard the intruders say a number of things, including: "[Y]'all mother fuckers know what it is"; "[W]here the shit at"; "[C]'mon, Strong"; and "[B]itch, get out [of] the kitchen and come back in there or I'm shooting everybody in the house." She also heard one of the men direct another to get the carton of Newports, and one of them say, just before leaving, "I hate to do you like this, Cuz," which was followed by a sound like an egg splattering and Matthews moaning.

Hines testified that the men took Matthews' cash, her camcorder, and the carton of cigarettes. She described finding the two bullets in the living room after the police left her apartment and her discovery of the smashed camcorder behind the neighboring building the next day. She said that she described Cade to the police and later picked his photograph out of a photographic lineup. She also testified that she told the police she recognized the defendant's voice and that she gave them his name.

Alora Williams testified that she fled to the kitchen when the door of the apartment was burst open, but "the next thing [she] kn[e]w, a big gun was in [her] face" and one of the intruders threatened to shoot everyone in

-4-

the apartment if she did not come out. She, therefore, put her hands in the air and returned to the living room, where she slumped against a wall and watched everything that transpired. She said that two men ran to the back of the apartment while two remained in the front. One of those two was wearing a blue bandana and the other one was wearing a stocking cap pulled down over his eyes. While the men in the back of the apartment were making noises that sounded as if they were tearing the rooms apart, the man in the stocking cap asked her questions about herself such as her name and where she was from, which she found odd. After the two men in the back ran to the front of the apartment and the men were heading out the door, the man who had been talking to her turned back and said, "I hate to do this to you, Cuz," before striking Matthews on the head with his gun.

Williams made a positive courtroom identification of the defendant as the man who struck Matthews in the head and said that Matthews had already given his money to the defendant before the defendant struck him. She said that she could see "straight through" the defendant's stocking cap and that she also recognized him by his voice. Williams explained that she had met the defendant before the burglary at a local mall, where he had engaged her in a couple of brief conversations and asked for her telephone number. They never went out on a date, however.

On cross-examination, Williams reiterated that she was able to see through the defendant's stocking cap, which, she said, was made of "see-through mesh." She testified that the defendant was the only one who talked and that her attention was concentrated on his mouth and his distinctive teeth, which consisted of front teeth that "stuck out" and bottom teeth that were discolored, rotting, and "kind of wrangled." On redirect examination, she testified that she identified the defendant from a photographic lineup about a week after the burglary and at a preliminary hearing held several weeks after the burglary.

James Cade testified that he was with the defendant in the parking lot of Hines's apartment complex for about thirty minutes early in the evening of May 21, 2008, before leaving by himself. Later that day, the defendant called to ask where he could get some drugs, and he gave him Hines's name. He and the defendant returned to the complex, met Hines as she was coming out of her apartment, and asked her about her drugs. She informed them that she did not have any at that time, so they left the complex again and he dropped the defendant off before going home and then to bed.

At about 1:30 or 2:00 a.m. the next morning, the defendant called to ask for a ride. Cade testified that he picked up the defendant and two men who were with the defendant and took them to Hines's apartment. All four of them walked up to Hines's porch, and the defendant knocked on the door and announced that he was "Mike." When the door opened "a little bit," the defendant took out a gun and he and his two friends "bum-rushed in." Cade said that he initially "froze up," but then returned to his car and went home and back to bed. The next morning, the defendant called to ask why he had deserted them and he explained to the defendant that he "didn't know it was going to go down like that." The defendant then told him that he had to hit Matthews in the head with his pistol "so he couldn't remember nothing" because Matthews had gotten too close to him when he was taking his money.

Cade, who said he had no criminal record before his charges in the instant case, testified that he had pled guilty to facilitation of especially aggravated robbery for his role in the crimes. On cross-examination, he acknowledged that he was originally charged with not only especially aggravated robbery, but also aggravated robbery and especially aggravated burglary. He further acknowledged that he had agreed to testify against the defendant in exchange for being allowed to plead guilty to the lesser-included offense of facilitation of especially aggravated robbery and the dismissal of the other charges against him.

Investigator Tiffany Copley of the Knoxville Police Department's Forensic Unit identified the bullets collected from the crime scene as well as various photographs of the apartment and Matthews' head injury and testified that she was unable to obtain any usable fingerprints from the apartment.

Matthews' medical records, which included a discharge summary noting that he had surgery for a skull fracture, were admitted as an exhibit by stipulation of the parties and published to the jury.

Investigator Charles Lee of the Knoxville Police Department's Major Crimes Unit testified that he showed Williams a photographic lineup on May 30, 2008, from which she positively identified the defendant. On that same day, he showed Hines a separate photographic lineup from which she made a positive identification of James Cade.

Following the trial court's denial of the defendant's motion for judgment of acquittal, Ebony Wright testified on the defendant's behalf that the defendant was with her at a nightclub from approximately 11:30 to

11:45 p.m. on May 21, 2008, until 3:45 a.m. the next day. On cross-examination, Wright testified that her earlier preliminary hearing testimony in which she said that she and the defendant were together on the night of May 22, 2008, was a "miscommunication." She acknowledged having testified at that hearing that she had been watching the Cavaliers play the Lakers on the night the defendant came to visit her. When informed that the game did not occur on that night, she testified that "it might've been a different team." Finally, she acknowledged that she had been convicted of shoplifting in June 2000.

The defendant elected not to testify and rested his case without presenting any additional evidence. Following deliberations, the jury convicted him of the indicted charges.

*Id*. at *1-5. This court modified the Petitioner's conviction for especially aggravated burglary to aggravated burglary and modified his effective sentence to forty-seven years' incarceration. The judgments of the trial court were affirmed in all other respects.

The Petitioner filed a pro se petition for post-conviction relief, and two amended petitions were filed by appointed post-conviction counsel. Although the three petitions raised multiple issues, we limit our review to the issues raised during the post-conviction hearing and on appeal.

At the August 17, 2016 post-conviction hearing, trial counsel testified that he had practiced law since 2003. Counsel stated that he could not recall whether he spoke with the Petitioner's previous attorney about the case, that he was unaware previous counsel had hired an investigator, and that he did not discuss the Petitioner's case with previous counsel's investigator. Counsel said that he did not review witness statements or recordings prepared by previous counsel's investigator and that he was unaware Ms. Williams "recanted her identification" of the Petitioner to the investigator before the trial.

Trial counsel testified that he investigated the case and that his fee for investigating may have been included with the "prepare for trial" or "discovery" fee claim entries. Counsel stated that he reviewed the evidence, that he and the Petitioner, along with the Petitioner's girlfriend, discussed the case, and that he spoke with the State during his investigation. Counsel said that he did not interview the victims but that the victims' testimony was "consistent with what [the Petitioner] said they were going to testify to, [and] with what the State said they were going to testify to." Counsel stated that codefendant Cade was an accomplice, that the trial transcript did not reflect that counsel requested an accomplice jury instruction, and that he did not know if the issue was raised in a motion for a new trial. Counsel stated that he raised the lack of an instruction on appeal but agreed that if an issue were not raised in a motion for a new trial, it was generally waived.

-7-

Trial counsel testified that the "heart of the case" was the especially aggravated robbery charge and that he was aware the robbery statute stated the taking must be concurrent with or preceded by force. When asked whether he was "familiar with cases such as *Owens* and *Swift* about a taking followed later in time by an assault and how it's distinguished from a robbery," counsel said that he had not been presented with that issue and was unaware of the issue at the time of the Petitioner's trial. The following exchange occurred between the post-conviction court, post-conviction counsel, and the State:

THE COURT: Was sufficiency of the evidence an issue litigated on appeal?

THE STATE: The [court of criminal appeals] found, your Honor, please, that there was sufficient evidence to support the convictions and just – I think the only thing that changed was that I convicted him of especially aggravated burglary and especially aggravated robbery, and so the [court of criminal appeals] decided that that was duplicative and so they reduced the especially aggravated burglary to aggravated burglary and adjusted his sentence.

. . .

[POST-CONVICTION COUNSEL]: Sufficiency was litigated. This – the exact issue of the timing of the force was not.

THE COURT: But how would sufficiency of the evidence not subsume that issue?

[POST-CONVICTION COUNSEL]: . . . [I]f no party pressed it to the [c]ourt, the court of appeals cannot be expected to reach into that issue without having been asked and find essentially that nobody's complained about the timing of the force, but we've decided that we're going to deal with the timing of the force.

. . .

THE COURT: Well, go ahead. Go ahead.

Trial counsel stated that he did not argue that the serious bodily injury occurred after the taking and that he could not remember if he argued the Petitioner committed an aggravated robbery rather than especially aggravated robbery during his closing argument.

-8-

Trial counsel testified that the Petitioner received a twelve-year sentence on the aggravated robbery of Ms. Williams. Counsel was shown a transcript of Ms. Williams's testimony and was asked what property was taken from Ms. Williams. The following exchange occurred:

[THE STATE]: Your Honor, let me just object at this point –

THE COURT: Why should I not sustain that, [Post-Conviction Counsel], if the court of criminal appeals has ruled on the sufficiency of the evidence within this record to sustain these convictions, has this not been previously determined? Where are we going?

. . .

[POST-CONVICTION COUNSEL]: Your Honor, the issue before the Court is, in this case, whether or not it was argued to the trial court level and argued on appeal whether that issue was raised. Now, I recognize that the court of criminal appeals was asked as a general proposition to review the sufficiency of the evidence, but as this [c]ourt is aware our position is that a court, a trial court, or an appellate court, should not be expected to on its own parse through the issues when the issues are not pressed by the litigants.

. . .

THE COURT: All right. Well, I'll give you a little latitude. I know what the issue is here and you know where I stand on –

[POST-CONVICTION COUNSEL]: I do.

THE COURT: – the sufficiency of the evidence.

Trial counsel testified that the fee claim reflected he spent one and one half hours with the Petitioner before the trial. Counsel stated that he spoke with the Petitioner about testifying and the Petitioner's criminal record and that "whether it was a [thirty] second discussion or a [thirty] minute discussion, [the Petitioner] knew he could not testify." Counsel stated that whether to testify was the Petitioner's decision "but with his record, it would've been devastating to any sort of defense."

Trial counsel testified that this case was all about "identification" and that Ms. Williams was the only witness who could "sort of identify" the Petitioner. Counsel agreed that the identification of the Petitioner "basically turned on Ms. Williams's

somewhat identification and the testimony of [codefendant] Cade" and that Ms. Williams had selected the Petitioner from a photograph lineup a few weeks after the incident.

On cross-examination, trial counsel testified that he did not represent the Petitioner at the preliminary hearing, that he received a transcript of the preliminary hearing, and that Ebony Wright testified as a defense witness at the hearing and at the trial. Counsel stated that previous counsel withdrew because the Petitioner was uncooperative.

Trial counsel testified that he learned codefendant Cade was going to testify days before the trial, that he cross-examined codefendant Cade about his hope to receive a lesser sentence in exchange for his testimony, and that codefendant Cade's testimony was corroborated by other evidence. Counsel said Ms. Williams identified the Petitioner on the night of the robbery in a photograph lineup and at the preliminary hearing. Counsel stated that Ms. Williams said she first met the Petitioner at a shopping mall and that she recognized the Petitioner's teeth and voice during the robbery. Counsel said that Ms. Hines and Ms. Thompson testified that they saw the Petitioner and codefendant Cade in their neighborhood on the day of the robbery and that Ms. Hines said she recognized the Petitioner's voice. Counsel stated that Ms. Williams and Mr. Matthews were inside the apartment when the robbery occurred and that Ms. Williams did not suffer serious bodily injury.

Trial counsel testified that the State filed a notice of intent to seek enhanced punishment based on the Petitioner's criminal record, which included crimes of violence and dishonesty, including theft. Counsel stated that he agreed with the Petitioner's decision not to testify and that the Petitioner would have had "major credibility issues" if he had testified.

Trial counsel testified that his primary focus was to challenge the Petitioner's identity and codefendant Cade's testimony. Counsel said that he called Ms. Wright as an alibi witness but that her testimony did not provide a "complete alibi." Counsel stated that it was possible his fee claim did not include all of his work in the case. Counsel said that he filed a timely motion for a new trial and a notice of appeal. On redirect examination, counsel testified that he did not challenge the admissibility of the Petitioner's previous convictions before the trial.

Private Investigator Thomas Ham testified that previous counsel hired him to investigate the Petitioner's case and that he interviewed Ms. Williams by telephone. A transcript of the interview was introduced as an exhibit and reflected that Ms. Williams told Mr. Ham that the incident was "so long ago [she didn't] remember anything" and that she could not recognize the Petitioner's voice. Mr. Ham stated that he met with previous counsel and the Petitioner on one occasion and that he created a memorandum of the meeting. Mr. Ham said trial counsel never contacted him, asked for his records, or

requested that he continue investigating. On cross-examination, Mr. Ham testified that he was unaware Ms. Williams identified the Petitioner from a photograph lineup.

The post-conviction court entered a written order denying post-conviction relief. The court found that counsel failed to request an accomplice instruction where it was warranted and that counsel did not utilize previous counsel's investigation. However, the court concluded that the outcome of the trial would have been the same regardless of counsel's failures and determined that the Petitioner failed to establish prejudice. The post-conviction court did not address any additional allegations of the ineffective assistance of counsel in its order. This appeal followed.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

## I.    Ineffective Assistance of Counsel

The Petitioner asserts that trial counsel provided ineffective assistance by failing to challenge the especially aggravated robbery conviction on the basis that Mr. Matthews suffered serious bodily injury after the theft had been completed. The Petitioner argues that counsel was ineffective for failing to request a dismissal of the aggravated robbery conviction because nothing was stolen from Ms. Williams. The Petitioner alleges that counsel was ineffective for failing to request an accomplice jury instruction. The Petitioner asserts that counsel was ineffective because he failed to investigate properly and failed to use information from the previous investigation during the cross-examination of Ms. Williams. The State responds that counsel's performance was not deficient because he did not argue that the Petitioner did not commit especially aggravated robbery pertaining to Mr. Matthews or aggravated robbery pertaining to Ms. Williams and that the Petitioner failed to prove he was prejudiced by counsel's failure to request an accomplice instruction or to utilize previous counsel's investigation.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland*

-11-

standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

### a. Especially Aggravated Robbery

The Petitioner contends that trial counsel provided ineffective assistance by failing to challenge the especially aggravated robbery conviction on the basis that Mr. Matthews did not suffer serious bodily injury until after the theft occurred. The State responds that counsel's performance was not ineffective in this regard because the Petitioner had not completed the theft when the injury was inflicted and that the Petitioner's intent in inflicting serious bodily injury was to "impair [Mr. Matthews's] memory, so as to facilitate the commission of the theft."

Tennessee Code Annotated section 40-30-111(b) (2012) states that a post-conviction court "shall enter a final order, and . . . shall set forth in the order or a written memorandum of the case all grounds presented, and shall state the findings of fact and conclusions of law with regard to each ground." A post-convictions court's failure to make specific findings in the written order does not automatically result in the reversal of the post-conviction court's judgment. *State v. Swanson*, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984); *see George v. State*, 533 S.W.2d 322 (Tenn. Crim. App. 1975). The intent of the General Assembly underlying the written order requirement "is to aid in appellate review; thus, the failure to meet the requirement does not require reversal where the record is sufficient to effectuate a meaningful appellate review." *George Scott Mason*

-12-

v. State, No. M2013-01170-CCA-R3-PC, 2014 WL 1657681 at *4 (Tenn. Crim. App. April 23, 2014); *see Swanson*, 680 S.W.2d at 489. If a post-conviction court makes adequate findings on the record, then the failure to include such findings in the written order may be harmless error. *Id*.

The post-conviction court did not address this issue in its written order denying post-conviction relief. The post-conviction hearing transcript reflects that the court stated that this issue had been "subsumed" by this court's sufficiency of the evidence determinations in the previous appeal and did not make findings as to whether trial counsel provided ineffective assistance. In the previous appeal, counsel argued that the evidence was insufficient to support the convictions because the only evidence linking the Petitioner to the crimes was the uncorroborated testimony of an alleged accomplice and because a victim's identification of the Petitioner from a photograph lineup was "flawed" because "[the Petitioner's] face was never seen" by the victim. Counsel did not raise an issue regarding the sufficiency of the evidence relative to the serious bodily injury element of especially aggravated robbery. This court determined that the sufficiency of the evidence relative to the Petitioner's identity was without merit.

The issue of whether the evidence is sufficient to establish a defendant's identity as the perpetrator is distinct from whether trial counsel provided deficient performance by failing to challenge a conviction on a specific basis. The post-conviction court failed to make findings relative to this issue and said merely that the issue was "subsumed" by the previous appeal. We remand the case to the post-conviction court for consideration of whether counsel provided ineffective assistance by failing to challenge the sufficiency of the evidence of serious bodily injury as an element of the Petitioner's especially aggravated robbery conviction.

### b. Aggravated Robbery

The Petitioner contends that trial counsel provided ineffective assistance by failing to argue that the aggravated robbery conviction relative to Ms. Williams should have been dismissed. The Petitioner argues that $200 cash, a camcorder, and a carton of cigarettes were taken and that Ms. Williams did not possess the property when it was stolen.[1] The State responds that counsel was not deficient because Ms. Williams constructively possessed the stolen property. The State also argues that this court affirmed the Petitioner's conviction in the previous appeal.

The post-conviction court failed to address whether counsel provided ineffective assistance by failing to challenge the Petitioner's conviction for aggravated robbery relative to Ms. Williams in its written order. *See* T.C.A. § 40-30-111(b). The post-conviction court determined at the hearing that this issue was also "subsumed" by this

---

[1] The trial transcript reflects that Ms. Hines testified that a PlayStation was also stolen.

court's determinations in the previous appeal relative to sufficiency of the evidence. As we have stated, counsel in the previous appeal limited his attack on the sufficiency of the evidence to arguments related to identification evidence and uncorroborated accomplice testimony. Counsel did not raise an issue regarding the sufficiency of the evidence relative to Ms. Williams's ownership or possession of the property taken in the aggravated robbery.[2] Whether counsel was ineffective in failing to raise this issue in the previous appeal is a distinct question from the issues raised related to the sufficiency of the evidence identifying the Petitioner as the perpetrator of the aggravated robbery. The post-conviction court failed to make findings relative to the issue and said merely that it was "subsumed" by the previous appeal. As such, we must remand the case to the post-conviction court for consideration of whether counsel provided ineffective assistance by failing to challenge the sufficiency of the evidence showing that Ms. Williams owned or possessed the property at the time of its taking relative to the aggravated robbery conviction.

### c. Failure to Request an Accomplice Instruction

The Petitioner contends that trial counsel was ineffective because he failed to request a jury instruction regarding evaluation of accomplice testimony and failed to include this issue in his motion for a new trial. The Petitioner argues that without the instruction, it is impossible to know whether the jury would have found that sufficient corroborative evidence existed to convict the Petitioner. The State responds that the post-conviction court did not err in denying relief because the Petitioner failed to show he was prejudiced by the absence of the instruction. We conclude that the post-conviction court did not err in denying relief on this basis.

"An accomplice is defined as a person who knowingly, voluntarily and with common intent unites with the principal offender in the commission of the crime." *State v. Anderson*, 985 S.W.2d 9, 16 (Tenn. Crim. App. 1997) (citing *State v. Perkinson*, 867 S.W.2d 1, 7 (Tenn. Crim. App. 1992)). "[A] conviction may not be based solely upon the uncorroborated testimony of an accomplice." *See, e.g., State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001); *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994); *Monts v. State*, 379 S.W.2d 34, 43 (Tenn. 1964), *overruled on other grounds by State v. Collier*, 411

---

[2] Theft occurs when "a person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103(a). Aggravated robbery is defined, in relevant part, as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" which is "[a]ccomplished with a deadly weapon." *Id*. §§ 39-13-401(a), -403(a)(1). An owner of property is defined as "a person, other than the defendant, who has possession of or any interest other than a mortgage, deed of trust or security interest in property, even though that possession or interest is unlawful and without whose consent the defendant has no authority to exert control over the property." *Id*. § 39-11-106 (a)(26).

S.W.3d 886 (Tenn. 2013). In order for accomplice testimony to be adequately corroborated:

> [T]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence.

*Bigbee*, 885 S.W.2d at 803 (quoting *State v. Gaylor*, 862 S.W.2d 546, 552 (Tenn. Crim. App. 1992) (citations omitted)); *see Shaw*, 37 S.W.3d at 903.

We conclude that the record supports the post-conviction court's determination that counsel's performance was deficient because he failed to request an accomplice instruction. Codefendant Cade was charged in this case and received a lesser punishment in exchange for his testimony against the Petitioner at the trial. Counsel testified that he learned codefendant Cade was going to testify against the Petitioner days before the trial and that one of his primary focuses was to challenge codefendant Cade's testimony. Counsel failed to request the instruction and failed to raise the issue in the motion for new trial. This court waived the issue in the previous appeal. *See William Ray Boatwright*, 2013 WL 775787, at *8.

In the previous appeal, this court reviewed the sufficiency of the evidence relative to identity. *Id.* at *6. This court stated that "[T]here was sufficient evidence in this case, wholly apart from Cade's testimony, from which the jury could find the defendant guilty of the offenses beyond a reasonable doubt." *Id.* at *7. We conclude that the evidence supports the post-conviction court's determination that trial counsel's deficiency was not prejudicial. The Petitioner is not entitled to relief on this basis.

### d. Failure to Investigate

The Petitioner contends that trial counsel was ineffective for failing to utilize previous counsel's investigator, Mr. Ham, in relation to Ms. Williams's testimony. The Petitioner argues that Ms. Williams told Mr. Ham she did not recall anything about the night of the robbery and that she did not recognize the Petitioner's voice. The Petitioner asserts that Ms. Williams and codefendant Cade were the only witnesses identifying the Petitioner, that this court primarily relied upon Ms. Williams's testimony to corroborate codefendant Cade's testimony, and that the outcome of the Petitioner's previous appeal

may have been different if counsel had cross-examined Ms. Williams about her statements. The State responds that the post-conviction court properly determined that the Petitioner failed to show prejudice from counsel's failure to utilize the previous investigation.

Trial counsel had the duty to conduct factual and legal investigations. *See Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). Counsel testified that he was unaware previous counsel hired an investigator, that trial counsel did not discuss the Petitioner's case with the investigator, and that counsel did not speak with previous counsel. Trial counsel said that he did not review witness statements or recordings prepared by the investigator and that he was unaware Ms. Williams "recanted her identification" to Mr. Ham before the trial. One of the critical issues at trial was identification of the perpetrator, and the post-conviction court found that counsel's failure to learn of Ms. Williams's statements to the investigator constituted deficient performance. The record supports the post-conviction court's determination in this regard.

The record also supports the post-conviction court's determination that the Petitioner failed to prove he was prejudiced by trial counsel's deficiency. Mr. Ham testified at the post-conviction hearing that Ms. Williams said she could not recall the night of the robbery or identify the Petitioner. However, Ms. Williams testified at the trial about the events on the night of the robbery and said that she was able to identify the Petitioner's voice and face. Even if Ms. Williams had been asked about making this prior inconsistent statement at the trial, and had denied making it, the record supports the post-conviction court's determination that Mr. Ham's testimony would not have changed the outcome of the trial. *See* Tenn. R. Evid. 613. The Petitioner is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, we reverse the judgment of the post-conviction court and remand the case for further determinations relative to whether trial counsel provided ineffective assistance regarding the especially aggravated robbery conviction involving Mr. Matthews and the aggravated robbery conviction involving Ms. Williams. We affirm the post-conviction court's determinations in all other respects.

_____
ROBERT H. MONTGOMERY, JR., JUDGE