IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs May 2, 2018

## STATE OF TENNESSEE v. LAVELLE MOORE

**Appeal from the Criminal Court for Shelby County**
No. 14-01286    Chris Craft, Judge

_____

### No. W2016-00336-CCA-R3-CD

_____

The Defendant, Lavelle Moore, was convicted by a Shelby County Criminal Court jury of two counts of theft of merchandise over $1000, a Class D felony, under alternate theories. The trial court merged the convictions and sentenced the Defendant as a career offender to twelve years at 60% in the Department of Correction, to be served consecutively to his sentence in another case. The sole issue the Defendant raises on appeal is whether the evidence is sufficient to sustain his conviction. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and J. ROSS DYER, JJ., joined.

Brian Clay Johnson (on appeal), Jackson, Tennessee; and John Dolan, (at trial), Memphis, Tennessee, for the appellant, Lavelle Moore.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Chris Lareau, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On the evening of October 30, 2012, a man shoplifted several computers from a Memphis Best Buy store. A store employee witnessed the man dive into the back seat of a waiting car with the armload of merchandise and recorded the vehicle's license number, make, and model. The store's surveillance videotape, which was reviewed the next day, revealed that the shoplifter was accompanied by a second man, who drove the getaway vehicle, and a woman who appeared to be acting as a lookout. Six days after the theft, a Memphis Police officer stopped a vehicle matching the description of the getaway vehicle and arrested the three occupants: the Defendant, Crystal London, and Corey Henry. All three were indicted together for two counts of theft of merchandise over $1000, under alternate theories of the offense. Ms. London subsequently pled guilty to theft over $1000 and later testified against the Defendant at his trial.

The first witness at the Defendant's November 30, 2015 trial was Kent Harris, the Best Buy employee who recorded the getaway vehicle's identifying information. He testified that he was taking a smoke break outside the store when he saw "somebody diving into a car with an armload of something," which struck him as "a little weird." At about the same time, he heard over his radio "Kent! Kent! Somebody just ran out of the building with computers." He, therefore, recorded the vehicle's tag number and noted that it was a Cadillac STS. Mr. Harris identified the piece of paper on which he had recorded the vehicle's tag number, make, and model, which was admitted as an exhibit. He said he noted that the vehicle was dark but could not tell if it was blue or black because there were no street lights at the location.

On cross-examination, Mr. Harris acknowledged that it was dark at the time he witnessed the incident and that he was unable to identify the Defendant at trial. He said after recording the vehicle's information, he immediately called "Matt" and told him that he had just seen somebody jump in the back of a vehicle with what appeared to be laptop computers. He stated that Matt told him to leave the paper with the vehicle's tag number and description in the Loss Prevention office.

Shelby County Sheriff's Deputy John Pitts, when asked by the prosecutor to direct his attention to October 30, 2012, testified that he was patrolling in the area of Lagrange Downs when a black Cadillac drove past that matched the description of a vehicle for which he had earlier received a "Be on the Look Out" (BOLO) alert. He said he stopped the vehicle and detained the three individuals who were inside: the Defendant, Crystal London, and Corey Henry. Although he was not positive, he believed the Defendant was the driver. Deputy Pitts made a positive courtroom identification of the Defendant as one of the three individuals in the vehicle that night.

On cross-examination, Deputy Pitts acknowledged that according to the arrest ticket and affidavit of complaint, the date of the traffic stop was November 5, 2012, rather than October 30, 2012.

Matthew Salamon testified that he was currently the area investigator for Sports Authority but in October 2012 was employed by the Wolfchase Best Buy on Germantown Parkway. On the evening of October 30, 2012, he was informed over the phone that several laptops had been stolen from the store. He told the caller to leave the information on his desk and the next day when he arrived at work he learned that the store had experienced what is known as a "grab-and-run" theft of four laptops. Mr. Salamon identified the store's surveillance footage of the incident, which was admitted as an exhibit and played for the jury as Mr. Salamon narrated. He testified that the video showed three subjects, two males and a female, who entered the store a few seconds apart, beginning at 6:31 and 42 seconds. At 6:33 and 14 seconds, the first individual, a male, exited the store and ran to a vehicle in the parking lot. Mr. Salamon agreed that the video showed that the vehicle stayed in place for a while but then began circling the parking lot.

Mr. Salamon testified that the vehicle circled the parking lot for approximately five minutes. He said the surveillance tape showed the female subject, who was still inside the store, on her telephone at 6:40 p.m. At 6:41 p.m., the second male subject placed four laptops in his shopping cart. At about that time, the vehicle that had been circling the parking lot pulled up to the front door and stopped. Next, the female subject exited the front door while looking behind her. Almost immediately after her, the second male subject ran out the exit door carrying the laptop computers in his arms. Mr. Salamon testified that the surveillance tape did not capture either of those subjects entering the dark vehicle. He said that the store suffered a loss of four Asus notebooks, each of which was valued at $480, for a combined loss of $1920.00.

On cross-examination, Mr. Salamon acknowledged he was not present when the theft occurred and did not know any of the individuals depicted in the surveillance tape. He further acknowledged that one of the individuals was wearing a hat and kept his head down so that his face was not visible.

Crystal London testified that she, the Defendant, and Corey Henry planned the shoplifting incident together and that she acted as a lookout while the Defendant waited in the car and Mr. Henry snatched the computers. She said that, after their November 5, 2012 arrest, she told the police about her role in the crime and, in April 2014, she pled guilty in connection with the case to theft over $1000 in exchange for four years of probation. She acknowledged that she had a previous misdemeanor theft conviction for theft over $500 to which she pled guilty in April 2001.

Ms. London identified herself, the Defendant, and Mr. Henry on the surveillance video, testifying that the Defendant entered the store first, followed by Mr. Henry and herself. She identified the Defendant as he left the store approximately two minutes later, and identified herself standing inside the store talking on her telephone while looking back at Mr. Henry. She said she was on the telephone with the Defendant and that she then walked out to the Defendant's waiting vehicle while Mr. Henry followed her outside with the computers. She stated that she got into the front passenger seat and Mr. Henry got into the back seat with the computers. Afterwards, the men dropped her off at her home. They did not, however, give her any of the computers or any money they received from the computers, telling her that she "didn't do nothing [sic], so [she] didn't get nothing." Ms. London testified that she was supposed to steal something from the store too, but she "got scared." She stated that when the three of them were arrested on November 5, they were in the Defendant's vehicle and the Defendant was driving.

On cross-examination, Ms. London acknowledged that she was in jail at the time she entered her guilty plea and that she received immediate probation as a result of her plea. She further acknowledged that at the time of her arrest in the instant case, she was on probation from a felony theft conviction in Mississippi, had a previous felony theft conviction in Arkansas, and had another felony theft conviction in Tennessee. She also admitted that the vehicle at issue in the case was registered in the name of Crystal Taylor, a fictitious person. She stated that she was present with the Defendant when he was trying to register the vehicle in that name. Finally, she acknowledged that the store's surveillance video did not show the Defendant carrying anything out of the store or sitting outside in the vehicle.

The Defendant elected not to testify and rested his case without presenting any witnesses. Following deliberations, the jury convicted the Defendant of the indicted offenses, which the trial court later merged into a single conviction.

## ANALYSIS

The sole issue the Defendant raises on appeal is whether the evidence is sufficient to sustain his conviction. Specifically, the Defendant argues that there was insufficient evidence to corroborate the accomplice testimony that the Defendant was a participant in the crime. The State responds by arguing that Ms. London's accomplice testimony was corroborated by the testimony of other State witnesses and the store's surveillance videotape and, as such, that the evidence is sufficient to sustain the Defendant's conviction. We agree with the State.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). The same standard applies whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

A criminal offense may be established entirely by circumstantial evidence. State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010). It is for the jury to determine the weight to be given the circumstantial evidence and the extent to which the circumstances are consistent with the guilt of the defendant and inconsistent with his innocence. State v. James, 315 S.W.3d 440, 456 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 380-81 (Tenn. 2011) (adopting the federal standard of review for cases in which the evidence is entirely circumstantial).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523, 527 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

"An accomplice is defined as a person who knowingly, voluntarily and with common intent unites with the principal offender in the commission of the crime." State v. Anderson, 985 S.W.2d 9, 16 (Tenn. Crim. App. 1997) (citing State v. Perkinson, 867 S.W.2d 1, 7 (Tenn. Crim. App. 1992)). A criminal defendant in Tennessee cannot be convicted solely on the uncorroborated testimony of an accomplice. State v. Bane, 57 S.W.3d 411, 419 (Tenn. 2001) (citing State v. Stout, 46 S.W.3d 689, 696 (Tenn. 2001); State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Robinson, 971 S.W.2d 30, 42 (Tenn. Crim. App. 1997)). This principle has been described as follows:

> "[T]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence. The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration."

Bigbee, 885 S.W.2d at 803 (quoting State v. Gaylor, 862 S.W.2d 546, 552 (Tenn. Crim. App. 1992)). Whether sufficient corroboration exists is for the jury to determine. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). The jury determines "the degree of evidence necessary to corroborate the testimony of an accomplice, and it is sufficient 'if there is some other evidence fairly tending to connect the defendant with the commission of the crime.'" State v. Anderson, 985 S.W.2d 9, 16 (Tenn. Crim. App. 1997) (quoting Clapp v. State, 30 S.W. 214, 217 (Tenn. 1895)).

The Defendant argues that the only person who identified him as a participant in the crime was Ms. London, a "wholly self-serving witness" whose "testimony was inconsistent and tainted with her history of dishonesty." It was, however, within the

jury's province to determine the credibility of Ms. London's testimony and whether it was sufficiently corroborated by additional evidence. In addition to Ms. London, the jury heard from the Best Buy employee who recorded the identifying information of the getaway vehicle and from the officer who arrested the Defendant, Ms. London, and Mr. Henry in that same vehicle approximately six days later. Moreover, the jury was able to view the store's surveillance videotape of the incident and to make its own determination of how recognizable the participants were on the video. In sum, we conclude that there was enough evidence in the form of the testimony of the Best Buy employee and the officer, as well as the security footage, to corroborate the accomplice testimony that the Defendant was a participant in the crime.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE